430 So.2d 747 (1983)
MAURIN-OGDEN-1978 PINHOOK PLAZA, a Louisiana Partnership in Commendam
v.
The WIENER CORPORATION.
No. 82-CA-206.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 1983.
*748 Steven J. Dupuis, Lafayette, for plaintiff-appellant.
Herman C. Hoffmann, Jr., Anita M. Warner, New Orleans, for defendant-appellee.
Before BOWES, GAUDIN and DUFRESNE, JJ.
DUFRESNE, Judge.
The partnership of Maurin-Ogden, plaintiff-appellant, brings this appeal from a judgment rejecting its claim for past-due rent on a shopping center store leased by Wiener Corporation, defendant-appellee. Because we find that Maurin-Ogden breached a specific provision in the lease by unreasonably refusing to permit Wiener to sublet the premises and thus terminated the lease, we hold that no past-due rents are owing. We therefore affirm the judgment of the trial court.
There are no factual disputes. Maurin-Ogden is a shopping center developer. Wiener Corporation is a retail store chain which operates under several trade names, each of which caters to a different income level clientele. The parties entered into a lease for a store in a new shopping center on July 28, 1978. During negotiations, Maurin-Ogden informed Wiener that the center was intended to appeal to a middle to upper income clientele and urged Wiener to consider putting in one of their better trade name stores. Wiener chose, however, to put one of their Shoe Town stores at the location, and Maurin-Ogden accepted this decision.
Included in the lease was a provision restricting use of the space to "a retail shoe or apparel and sportswear store under the trade name `Shoe Town' (shoes) and related accessories." Also included in the lease was a non-competition clause whereby lessor agreed not to lease any other space in the shopping center to any other "shoe store."
In further negotiations, Wiener asked that a sub-lease clause be provided. While Maurin-Ogden does not generally permit sub-leases in its shopping centers, it agreed here to permit sub-leasing with its written consent, which consent would not be "unreasonably withheld."
On April 1, 1979, Wiener opened the Shoe Town store. By the fall of 1980, the operation was deemed a failure by Wiener, and it decided to relinquish the store. On November 6, 1980, it informed Maurin-Ogden that it wished to sub-let the store under the same terms and conditions to Volume Shoe Corporation, better known as Pay-Less Shoe Stores. In its initial response of November 10, 1980, Maurin-Ogden refused to permit the sub-lease on the grounds that Pay-Less was a much lower caliber store than Shoe Town and that other tenants in the center strenuously objected to this reduction in the quality of the "tenant-mix". Wiener responded that Pay-Less was comparable to Shoe Town, that it considered the refusal unreasonable, and that this refusal terminated the lease as of December 31, 1980. Thereupon, Maurin-Ogden again wrote Wiener alleging that Pay-Less was indeed inferior because it did not sell a line of sportswear as did Shoe Town, that the other tenants objected to Pay-Less, and that as one budget shoe store had failed at the location it had no reason to believe that another would succeed.
Wiener vacated the store by December 31, 1980, and the premises remained empty until August 1, 1981. Wiener refused to pay rent for this period and Maurin-Ogden filed suit to collect.
At trial, Roger Ogden, president of Maurin-Ogden, admitted contrary to assertions previously made, that Shoe Town and Pay-Less were almost identical operations, and that Pay-Less was financially sounder and had a higher credit rating than Wiener. While he did mention that Pay-Less was distinguishable in not carrying a sports-clothes line, he did not insist that this was crucial to the decision to refuse the sublease. His testimony was rather that the decision was based first on the fact that *749 Shoe Town was a failure and he had no reason to believe that Pay-Less could do better. His second reason was that Shoe Town, and presumably Pay-Less, did not attract the middle and upper income clientele to whom other tenants in the center catered and these other shops therefore did not profit, and may indeed have been harmed, by the presence of a budget shoe store.
On these facts, the trial judge concluded that Maurin-Ogden had abused its rights by unreasonably refusing to permit the sublease. Judgment was thus rendered dismissing this action for past due rent. Maurin-Ogden now appeals.
In a well reasoned opinion, the trial court resorted to the doctrine of abuse of rights, and concluded that Maurin-Ogden had acted without regard for Wiener's interest, and thus that enforcement of the lessor's right to refuse to sub-let was against moral rules, good faith or elementary fairness. Citing Illinois Central Gulf Railroad Co. v. International Harvester Co., 368 So.2d 1009, (La.1979); LSA-R.C.C. Art. 1901. While we express no opinion as to the trial court's use of the equitable abuse of rights doctrine, we decline to follow his reasoning because we find no need to resort to equity here. We base our decision instead on LSA-R.C.C., Arts. 1945 and 1955. The first of these articles provides that the intent of the parties to a contract is the law between them. The second states that agreements must be construed in their entirety. Our inquiry here is therefore to ascertain the intent of the parties in confecting the sublease clause in light of the entire contract.
We note initially that the clause in question was specifically bargained for by two equal parties, both of whom regularly engage in leasing shopping center properties. We must assume, therefore, that each side intended to create an enforceable right, with the only restriction to its exercise being a reasonable refusal by the lessor. From Wiener's point of view, the very least that it must have expected from the reasonable refusal clause is that it could sub-let to a financially sounder and almost exact copy of itself under the same terms and conditions as in the original lease. Moreover, because of the use and non-competition clauses, Wiener must also have known that proffer of a sub-tenant in any business other than shoes or apparel would have given the lessor reasonable grounds to refuse the sub-lease. Taking these clauses together we conclude that Wiener's minimal expectation was that a reputable bargain shoe operation would be the most reasonable sub-tenant possible under the contract.
As for Maurin-Ogden, it must certainly have recognized that the only occurrence which could reasonably have prompted Wiener to sub-lease was if its operation was unsuccessful. Lessor urges to the contrary here that because Shoe Town failed it was reasonable to reject Pay-Less, but it is precisely the failure of Shoe Town which the lessor had to know was the only reason Wiener would give up the store and attempt to exercise this contractual right. Moreover, the lessor could not have expected more than a sound, reputable sub-tenant willing to risk opening at a location which had previously failed, under the same terms and conditions as the original lease, including the use and non-competition clauses which specifically mention a shoe outlet.
Lessor also argues that in its opinion Pay-Less would have adversely affected the tenant-mix, and therefore refusal was reasonable on this ground as well. The difficulty with this argument is that the lessor aggressively courted the Wiener lease, relaxed its policy of prohibiting sub-leases, stipulated in the lease that a shoe store was one of only two permissible uses for the space, and agreed not to permit other shoe stores to operate in the center. It now contends, in effect, that originally allowing a budget shoe store into the center was a bad business decision which had a negative effect on the tenant-mix and that the Pay-Less store would merely have compounded this error. While we have no reason to doubt these assertions, we refuse to seriously entertain the notion that Wiener intended, in the event of its failure, to obligate itself to either provide a sub-tenant which *750 was not only sound, but which would correct the lessor's mistake in originally leasing to a budget store, or continue paying rent on the space until a tenant suitable to such purposes could be found.
We are reinforced in these conclusions by the fact that in its written reasons for refusal, the lessor insisted that Pay-Less was substantially inferior to Shoe Town. At trial, Ogden admitted that the shoe operations of the two stores were of substantially the same quality, but he alleged that the absence of a sportswear line did make Pay-Less an inferior operation. While we have already determined that the use and non-competition clauses refute the sportswear argument, we return to this testimony because it clearly reveals that lessor knew that to reject Pay-Less simply because it might adversely affect the tenant-mix, or because it was a replica of Wiener's failed operation would have been unreasonable under the sub-lease clause.
For the foregoing reasons, the judgment of the trial court dismissing appellant's suit for past-due rent is hereby affirmed.
AFFIRMED.