468 So.2d 1215 (1984)
Ray W. BRELAND, Sr.
v.
LOUISIANA HOSPITAL SERVICES, INC., d/b/a Blue Cross of Louisiana.
No. CA 83 1247.
Court of Appeal of Louisiana, First Circuit.
December 7, 1984.
On Rehearing April 16, 1985.
Ray W. Breland, Jr., Bogalusa, for plaintiff-second appellant.
Henry J. Miltenberger, Jr., Covington, for defendant-first appellant.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
This is a suit in contract by Ray W. Breland, Sr. (Breland) seeking to compel Louisiana Hospital Services, Inc. d/b/a Blue Cross of Louisiana (Blue Cross) to pay benefits under a group health and accident insurance policy issued to Breland Foods, Inc. Breland also sought statutory penalties pursuant to La.R.S. 22:657 for failure to pay the claim and nonpecuniary damages for breach of contract. In a supplemental and amending petition, Breland prayed that the insurance policy be continued in full force and effect. Blue Cross answered the petition and asserted the policy was validly cancelled in accordance with its own terms and the Louisiana Insurance Code (La.R.S. Title 22), and the expenses incurred by Breland were after the date of cancellation and not covered by the policy. The district court rendered judgment in favor of Breland for $3,979.50 for past due benefits, assessed a statutory penalty consisting of $3,979.50 and an attorney fee of $2,500.00 and ordered Blue Cross to maintain its policy on Breland for treatment of his continuing illness. The district court rejected Breland's claim for damages for breach of contract. Blue Cross took this suspensive appeal. Breland took a devolutive appeal contesting the portions of the district court judgment which limited the penalty attorney fee to $2,500 and rejected the claim for damages for breach of contract.

FACTS
In 1964, Blue Cross issued a contract of group health and accident insurance to Breland *1216 Foods, Inc. Breland was covered by the policy at that time.
Breland had surgery in 1973 and was found to have renal cell cancer. Apparently, this condition was arrested but reappeared in 1979 and has gotten worse since then.
Pursuant to a request for group change by Breland Foods, Inc., a revised policy was issued by Blue Cross effective March 1, 1982. Breland was still a full-time employee of Breland Foods, Inc. at that time.
By letter dated April 27, 1982, which was received by Breland Foods, Inc. on April 30, 1982, Blue Cross cancelled its policy effective June 1, 1982. This notice of cancellation read as follows:
Blue Cross of Louisiana has always been a leader in the battle against rising health care costs. Our singular goal, since our birth, has been to offer quality health care protection at an affordable price.
In an effort to moderate cost, Blue Cross has supported the collective effort of area-wide health planning and encouraged the use of alternative health care procedures, such as same-day surgery and pre-admission testing.
In spite of these efforts and the benefit and rate changes made in 1980 and 1981, the financial losses experienced by Blue Cross last year were the highest in the history of the plan.
Studies show that a substantial portion of our losses in 1981 and prior years occurred in certain segments of our group business. To reduce these losses we have revised our criteria for renewal of this segment of group business.
As a result of these revisions, we will be unable to renew the health care contract with your group; therefore, by means of this letter, we are notifying you that your group health care contract will be cancelled effective June 1, 1982.
Breland Foods, Inc. and Breland objected to the cancellation of the policy. Breland requested that the policy be continued and forwarded the June premium check, which was refused and returned by Blue Cross. Blue Cross has refused to pay the medical bills incurred by Breland after June 1, 1982. This suit was filed on September 27, 1982.

EFFECT OF POLICY PROVISIONS ON TERMINATION AND PAYMENT OF BENEFITS AFTER TERMINATION
Blue Cross contends it had a right under the terms of its policy to cancel the contract, it was not required under the terms of the contract to pay for medical services rendered to Breland after the date of cancellation and the district court committed error by ordering it to do so. The district court relied on Cataldie v. Louisiana Health Service and Indemnity Company, 433 So.2d 367 (La.App. 3rd Cir.1983) and held "an insuror [sic] may not arbitrarily and without providing just cause terminate a health insurance policy and refuse to pay for medical expenses thereafter incurred by a person covered by such policy when the services are for a continuing illness for which the insuror [sic] had been previously paying benefits up to the time of the termination of the policy."
An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. La.C.C. art. 1901; Lambert v. Mutual Life Insurance Company of New York, 431 So.2d 23 (La.App. 1st Cir.1983), writ denied, 438 So.2d 571 (La.1983). Courts are bound to give legal effect to the terms of an insurance policy according to the true intent of the parties, and that intent is to be determined from the words of the contract when they are clear and explicit and lead to no absurd consequences. La.C.C. art. 1945. An ambiguity in a policy of insurance is construed against the insurer and in favor of the insured. La.C.C. art. 1958; Remondet v. Reserve National Insurance Company, 433 So.2d 792 (La.App. 5th Cir.1983), writ denied, 441 So.2d 216 (La.1983). Insurers may limit their liability under a policy of insurance as long as the limitation does not conflict with statutory law or offend public policy. Richard v. Board of *1217 Trustees of State Employees Group Benefits Program, 411 So.2d 491 (La.App. 1st Cir.1982).
On page one of the Blue Cross policy appears the following: "The Plan or the Group may cancel the Contract with 30 days written notice." In Article VII, Section (C) of the policy appears the following: "The Plan may change the fees for or the benefits of the Contract or may cancel the Contract at any time, by giving 30 days written notice to the Member at his last address as shown in the Plan records." The provisions for cancellation on 30 days notice are clear, explicit and unambiguous. They do not conflict with statutory law because under La.R.S. 22:636(A)(1) insurers are authorized to cancel policies on five days notice.
Article V, Section (A)(8) of the policy provides as follows: "No Health Care allowance will be provided for: ... Services after the termination of the Contract, regardless of the cause of termination, except as provided under Article VI, and for services rendered during an Admission in progress on the date the Member's Contract becomes effective;". Article VI, Section (A) provides as follows:
Notwithstanding any other provision of the Contract, if the fees are not paid to the Plan for the Contract within 30 days after they become due, the Contract is automatically terminated. Benefits, as defined under Article II, Paragraph A,1,a,1 through 23 of this contract, for Admissions beginning before the date of termination will cease at the end of the Admission or the Benefit Period, whichever occurs first. All other benefits will cease as of the date of termination.
An "admission" is defined in Article I, Section (A) as: "`Admission' means an uninterrupted Inpatient period of time spent in Member or Non-Member Hospitals." Paragraph 5 of the Joint Stipulation of Facts states that "Blue Cross has refused to pay the medical bills incurred after June 1, 1982 attached to these stipulations as `Exhibit 3'". Breland does not claim that any of the charges were incurred during an "admission" which commenced prior to the termination of coverage. In Tabb v. Louisiana Health Services & Indemnity Co., 361 So.2d 862 (La.1978), a group policy clause providing that no subscriber would be paid for medical services received after termination of the contract was held not to violate statutory law or public policy.[1]
The Louisiana Supreme Court granted a writ in the Court of Appeal Cataldie case relied on by the district court. Cataldie v. Louisiana Health Service & Indemnity Company, 440 So.2d 752 (La.1983). On September 10, 1984, in a 4-3 ruling, the Court of Appeal decision was affirmed. Cataldie v. Louisiana Health Service and Indemnity Company, 456 So.2d 1373 (La. 1984). However, the majority opinion declined to adopt the reasoning of the Court of Appeal. Instead, it found Cataldie had a non-group contract of health and accident insurance, the policy was subject to the provisions of La.R.S. 22:213(B)(7) providing "cancellation shall be without prejudice to any claim originating prior thereto", the Blue Cross policy termination provision was less favorable than the statutory provision, any policy provision in conflict with a statute is amended pursuant to La.R.S. 22:213(B)(8) to conform with the statute, and ruled that since Cataldie's daughter became ill during the term of the policy the cancellation did not prejudice her coverage after cancellation. The Supreme Court ruling in Cataldie is not applicable in the instant case because the policy herein is a group policy (in Cataldie the policy was a non-group policy), and pursuant to La.R.S. 22:221, the provisions of La.R.S. 22:213 are not applicable to group health and accident insurance policies.
The provisions of the Blue Cross policy in the instant case are clear, explicit, unambiguous and not prohibited by statutory law. However, when construed together, *1218 the effect of these policy provisions is that if a covered risk manifests itself during the term of the policy, Blue Cross can relieve itself of liability for the risk after the 30-day cancellation period.
In Cataldie, 456 So.2d at 1376, a majority of the Louisiana Supreme Court observed in dictum as follows:
When confronted with this type of situation all modern authorities we have found conclude that the policy cannot be terminated as to illness, injury or condition arising before the insurer's cancellation. They differ only as to the theory of the decision: AmbiguitySparks v. Republic National Life Insurance Co., [132 Ariz. 529] 647 P.2d 1127 (Ariz.1982), cert. den. 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982) (Cancellation of medical benefits policy); Public PolicyBrown v. Blue Cross & Blue Shield of Mississippi, 427 So.2d 139 (Miss.1983) (cancellation of medical benefits); Gulf Guaranty Life Insurance Co. v. Kelley, 389 So.2d 920 (Miss. 1980) (attempted cancellation of credit life policy following insured's heart attack); Detrimental RelianceMutual Ben. Life Ins. Co. v. Robison, 54 F. 580 (C.A.Iowa) aff'd 58 F. 723 (8th Cir.1893); Implied Covenant of Good Faith Spindle v. Travelers Insurance Co., 136 (C.A.Iowa) aff'd 58 F. 723 (7th Cir.1893); App. 2d Dist.1977) (cancellation of medical malpractice policy). Reasonable Expectations of Insured HonoredSee, Keeton Insurance Law Rights at Variance with Policy Provisions, 83 Harv.L. Rev. 1961 (1970).
See also, Blue Cross-Blue Shield of Alabama v. Turner, 43 Ala.App. 542, 195 So.2d 807 (Ala.App.1966) (pregnancy benefits payable despite prior cancellation of group hospital and medical expenses policy); National Life & Accident Ins. Co. v. Dove, 167 S.W.2d 257 (Tex.Civ.App.1942) (cancellation of health benefits not operative as to benefits for continuing illness). Dossey v. Life & Casualty Ins. Co. of Tenn., 177 So. 427 (La.App. 2d Cir.1937) (right to cancel life, health, and accident policy suspended as per insurance contract for disability existing at notice of cancellation); National Life Ins. Co. v. Jackson, 18 Ga.App. 494 [89 S.E. 633] (1916).
These theories involve many of the considerations which we would employ in deciding such a case as this under the abuse of rights doctrine. See e.g., Cueto-Rua, `Abuse of Rights' 35 La.L.Rev. 965 (1975); Comment, 42 La.L.Rev. 210 (1981). Since we have concluded that our decision is governed by the contract and statutory law, there is no need for us to consider that doctrine in this case.
[Bolding added].
The abuse of rights doctrine was described in Illinois Central Gulf Railroad Company v. International Harvester Company, 368 So.2d 1009, 1014 (La.1979) as follows:
In its origin, the abuse of rights doctrine was applied to prevent the holder of rights or powers from exercising those rights exclusively for the purpose of harming another, but today most courts in civil law jurisdictions will find an act abusive if the predominant motive for it was to cause harm. See, Cueto-Rua, supra, at 990-91; Catala and Weir, supra, at 222-26. The doctrine has been applied where an intent to harm was not proven, if it was shown that there was no serious and legitimate interest in the exercise of the right worthy of judicial protection. See, Cueto-Rua, supra, at 992-96; Catala and Weir, supra, at 230-34. Protection or enforcement of a right has been denied when the exercise of the right is against moral rules, good faith or elementary fairness. See, Cueto-Rua, supra, at 996-99. Another criteria, espoused originally by the French scholar Louis Josserand, would require an examination of the purpose for which the right was granted. If the holder of the right exercised the right for a purpose other than that for which the right was granted, then he may have abused the right. See, Cueto-Rua, supra, at 1000-1003; Catala and Weir, supra, at 227-29; Herman, supra, at 754-55.
*1219 In Cataldie, 456 So.2d at 1378, the Louisiana Supreme Court observed as follows:
Cataldie bargained for and reasonably expected to obtain $250,000 in major medical insurance in the event a catastrophic disease should attack his family. Blue Cross bargained for and reasonably should have expected to be exposed to this risk. By waiting until the risk had been realized before bringing about cancellation of the policies, Blue Cross made it impossible for Cataldie to obtain insurance for his daughter Amie from any other carrier. The insurer's action in this case is equally as unconscionable as any which the legislature aimed to prevent by the legislation; the parties' expectations are as reasonable as any the statute is designed to enforce; and Cataldie's reliance to his detriment has produced as desperate a set of circumstances as any contemplated by the lawmakers.
(Bolding added).
In Cataldie, 433 So.2d at 371, the Third Circuit Court of Appeal observed as follows:
While the hospitalization policy entered into by Louisiana Health Service and Indemnity Company and Sam Cataldie did not specifically provide that coverage under the policy would attach upon the contraction of an illness such as cancer by the plaintiff or a member of his family, we feel that public policy mandates that coverage of Amie Cataldie should have been continued under the terms of the policy as they existed immediately prior to the defendant's modification of the contract on May 15, 1982. To hold otherwise would be to sanction the unilateral cancellation of such a policy by an insurer at any time, without requiring it to provide any reason whatsoever, subject merely to the condition that the insurer give timely notice of such termination. It could allow an insurer to cancel a policy after the insured had paid premiums for years, simply because the insured had contracted a catastrophic illness, and thereby had become too onerous a client. Louisiana Health Service and Indemnity Company could theoretically never face exposure for more than 30 days under its interpretation of the policy, regardless of any provisions guaranteeing major medical and hospitalization benefits to the insured. Public policy is offended when an insurance company is allowed to effectively circumvent the terms of a hospitalization policy at its own caprice simply because an insured risk has occurred. Such a result totally destroys the purpose of having insurance and is completely incongruous and unconscionable.
[Bolding added].
In Brown v. Blue Cross & Blue Shield of Mississippi, Inc., 427 So.2d 139, 140-141 (Miss.1983), appears the following:
Corr-Williams, as employer, had in effect a group policy with Blue Cross for hospital and medical benefits, including maternity benefits, in which the Browns participated. Relying upon this coverage, the Browns planned and conceived a child in October 1975, after the waiting time required in the policy had expired. Mrs. Brown gave birth to a son July 13, 1976, in the Forrest General Hospital in Hattiesburg and was attended by a physician, resulting in medical expenses.
On February 1, 1976, Corr-Williams terminated its employee group coverage with Blue Cross without notification or consultation with the Browns. The replacement insurance carried no maternity benefits, and this cancellation precluded the Browns from obtaining adequate insurance. Had this policy with Blue Cross not been cancelled, the Browns would have been entitled to benefits thereunder. Their maternity benefits had accrued under the policy after they had waited the 270 days after being covered.
....
It is the position of Blue Cross on this appeal that it had the contractual right to terminate all benefits under this policy without any consideration whatever to *1220 beneficiaries such as the Browns, who had made plans in reliance thereon, and having irrevocably committed themselves to incur expenses for which they anticipated at least partial payment under the policy. It is extremely unlikely the Browns would have been interested in any insurance policy giving a company a blanket right to terminate all benefits under such circumstances. Of what value is such a policy to an insured?
In Gulf Guaranty Life Insurance Co. v. Kelley, 389 So.2d 920 (Miss.1980), Kelley procured a credit life insurance certificate through a Lucedale bank on June 28, 1975. He suffered a heart attack on July 1, and Gulf Guaranty learned of this July 18, and cancelled the insurance certificate under its contract giving it the absolute right to cancel a certificate at any time within ninety (90) days from the date of the issue of a certificate. Upon appeal, we recognized the contractual rights of the insurance carrier to cancel the policy, but held Gulf Guaranty was estopped to cancel as a matter of public policy:
Defendant argues it had the absolute right under the terms of its master policy to cancel the certificate of insurance issued to Kelley within 90 days from the date of issue. Ordinarily, this defense would be upheld; however, in this case the onset of Kelley's fatal illness occurred after the policy was in effect and continued without remission until his death. Considerations of public policy persuade us that, exercise by the insurer of its right to cancel should not be permitted after the onset of a fatal illness and death therefrom, upon the ground of estoppel. In Volume 3A of Appelman's Insurance Law and Practice, [Paragraph] 1813, the author states:
And where the company has accepted the premium on a policy and the insured has relied on its protection, the company is estopped to cancel the policy after the insured has reached such a physical condition that he cannot obtain desirable insurance on his life in any reputable company. [Mutual Benefit Life Ins. Co. v. Robison, C.A. Iowa 1893, 54 F. 580, 598].
We hold that, on the grounds of public policy, defendant was estopped from canceling the policy after the onset of Kelley's fatal illness. In so holding, we are not unmindful of the constitutional protection of the obligation of contracts afforded by Article I Section 10 of the United States Constitution. Allowing defendant to cancel the policy after Kelley became uninsurable would be unconscionable because Kelley had then reached such a physical condition that he was unable to obtain desirable insurance in any reputable company before his death. (389 So.2d at 922).
While it is true in this case the insurance contract was a group policy made between Corr-Williams and Blue Cross, and cancelled pursuant to agreement between these two, we do not believe this relieved Blue Cross from all obligations to insureds under this policy who found themselves in the situation of the Browns. Relying upon a policy in full force and effect, the Browns conceived a child, after waiting the required time, expecting hospital and medical benefits thereunder. While Mrs. Brown was pregnant, the policy was cancelled and the Browns were, according to the allegations of the declarations, denied any opportunity to obtain insurance elsewhere. We cannot uphold such a cancellation on the grounds of public policy. [Bolding added].
Although Blue Cross has the contractual right to terminate Breland's policy and avoid payment of benefits for medical services after the date of cancellation, we believe that it would be an abuse of rights to judicially allow such under the particular facts and circumstances of this case. We are mindful that the abuse of rights doctrine should be used sparingly. Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1977); Maurin-Ogden-1978 Pinhook *1221 Plaza v. Wiener Corporation, 430 So.2d 747 (La.App. 5th Cir.1983); Housing Authority of City of Abbeville v. Hebert, 387 So.2d 693 (La.App. 3rd Cir.1980) writ denied, 394 So.2d 275 (La.1980). However, to fail to apply the doctrine in the instant case and allow Blue Cross to enforce its contractual rights would leave Breland in a "desperate ... set of circumstances" wherein he will be "unable to obtain desirable insurance in any reputable company." Such a result is "unconscionable" to us, and we elect to apply the doctrine to bar Blue Cross from exercising its contractual rights in such a manner to Breland's detriment.
The portion of the district court judgment requiring Blue Cross to continue coverage for Breland for treatment of his renal cell cancer is correct and is affirmed.

AMOUNT OF BENEFITS PAST DUE
The district court rendered judgment in favor of Breland for past due benefits of $3,979.50 (the total of the balance due shown on Exhibits 3 [$3,633] and 5 [$346.50]). Blue Cross contends that this award did not take into account the policy provisions on deductible and portion of loss paid and that these provisions should be applied to a gross figure of $2,693.00 (the amount shown "current" on Exhibit 3 [$2,346.50] plus the amount shown on Exhibit 5).
Article II, Section (C)(1) of the policy provides as follows:
After the Comprehensive Medical Expenses Deductible as shown on the Schedule of Benefits has been met, the Plan agrees to pay 80% of the Comprehensive Medical Expenses, EXCEPT for expenses incurred for the treatment of mental and nervous disorders incurred by each Member, up to the Benefit Period Maximum. If a stop loss amount (the expenses incurred by a member for Health Care) is shown on the Request for Group Coverage or Request for Group Change of Benefits, the Plan agrees to pay 100% of the Comprehensive Medical Expenses incurred thereafter, for the balance of the Benefit Period, up to the limit of liability as shown on the Request for Group Coverage or Request for Group Change of Benefits, less any benefits paid for the treatment of mental and nervous disorders as detailed in paragraph 2 below.
The schedule of benefits on the cover page of the policy shows that the deductible is $100 per individual and the "stop loss amount" is $2,500.
Exhibit 3 attached to the Joint Stipulation of Facts shows a balance due of $3,633 and current of $2,346.50. Blue Cross agreed to this stipulation and is bound by it. We accept the correct balance due on Exhibit 3 as $3,633 and reject Blue Cross's claim that it is $2,346.50.
However, Exhibit 5 for $346.50 dated August 13, 1982, shows that it is based on a service or discharge date of March 31, 1982, (prior to termination) and is further based on a previous balance of $385.00 on May 30, 1982, (also prior to termination) to which a credit of $38.50 was applied on June 16, 1982. Paragraph 5 of the Joint Stipulation asserts that Blue Cross "refused to pay the medical bills incurred after June 1, 1982 attached to these stipulations as `Exhibit 3' (together with the rejection slips)". No reference is made to Exhibit 5. Since the Exhibit 5 obligation predates the date of termination (June 1, 1982), and is not mentioned in the stipulation, there is no evidence in the record to show that it is due and owing. Accordingly, it will not be considered in determining the past amount due after June 1, 1982.
Pursuant to Article II, Section (C)(1) of the policy, the amount due of $3,633 is subject to a $100 deductible and is recoverable thereafter at 80% of the first $2,500 and 100% of the excess. Thus, Breland is entitled to 80% of $2,500 ($2,000) plus 100% of $1,033, or $3,033.[2]
*1222 The judgment of the district court is amended to reflect this amount.

STATUTORY PENALTIES
The district court found that Blue Cross gave "no valid reason for terminating this policy of insurance" and assessed statutory penalties of $3,979.50 and an attorney fee of $2,500. Blue Cross contends the district court committed error in assessing statutory penalties because it gave a reason for termination in its cancellation letter, the Court of Appeal Cataldie decision did not come out (May 25, 1983) until after this case went to trial (March 1, 1983) and it had a right to litigate the serious issues in this case. Breland appealed and requested an increase in the attorney fee.
La.R.S. 22:657(A) provides, in pertinent part, as follows:
All claims arising under the terms of health and accident contracts issued in this state, ... shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist.... Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court.
This statute is penal and must be strictly construed. Its sanctions may not be imposed unless the refusal to pay is clearly arbitrary and capricious. Posey v. Board of Trustees, State Employees Group Benefits Program, 426 So.2d 705 (La.App. 1st Cir.1982), writ denied, 429 So.2d 139 (La. 1983).
The issue decided in the Court of Appeal Cataldie and the instant case is res nova. Cataldie, 433 So.2d at 370. This is a strong factor militating against finding the conduct of Blue Cross unreasonable, arbitrary or capricious. Rudloff v. Louisiana Health Services and Indemnity Co., 385 So.2d 767 (La.1980); Posey, 426 So.2d at 709; Hayden v. Torrence, 355 So.2d 1362 (La.App. 1st Cir.1978), writs denied, 357 So.2d 1166, 1169 (La.1978). In addition, facially the Blue Cross policy provisions are valid, enforceable and not in violation of a statute. Blue Cross, in this posture, could reasonably expect the policy would be judicially enforced. It is only because of the effect of these (otherwise lawful) policy provisions under the facts of this case that we are able to apply the seldom used doctrine of abuse of rights and grant Breland relief. Considering all of these factors, Blue Cross was not unreasonable in litigating its contentions.
The ruling of the district court granting statutory penalties is clearly wrong and is reversed.

RECOVERY OF NONPECUNIARY DAMAGES FOR BREACH OF INSURANCE CONTRACT
Breland appealed the judgment of the district court which denied his claim for nonpecuniary damages but cites no Louisiana authorities to support his claim.
This assignment of error is without merit. Since the contract of insurance was not for intellectual gratification, Breland is not entitled to nonpecuniary damages. La.C.C. art. 1934; Ostrowe v. Darensbourg, 377 So.2d 1201 (La.1979); Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976); Hartner v. Executive Industries, Inc., 424 So.2d 274 (La.App. 1st Cir.1982).[3]

DECREE
For the foregoing reasons, the judgment of the district court awarding benefits for *1223 medical services for renal cell cancer after June 1, 1982, and ordering continued coverage for that condition is amended to allow recovery of $3,033 for past due benefits but is otherwise affirmed; the judgment granting statutory penalties is reversed; and the judgment denying the claim for nonpecuniary damages for breach of contract is affirmed. Blue Cross is cast for all costs.
AMENDED AND AFFIRMED IN PART AND REVERSED IN PART.

ON REHEARING
LANIER, Judge.
We granted the rehearing application of Blue Cross to consider if there should be a remand to the district court for an evidentiary hearing on whether Blue Cross had legitimate and serious reasons for exercising its contractual rights.
The doctrine of abuse of rights did not become at issue in this matter until the case of Cataldie v. Louisiana Health Service and Indemnity Company, 456 So.2d 1373 (La.1984) was decided on September 10, 1984. At that time the district court judgment had been rendered, this appeal taken and oral argument scheduled in this court for September 27, 1984. If a party has a legitimate and serious interest in exercising a contractual right, he may do so even if it causes harm to another; however, if a party does not have a legitimate and serious interest in the exercise of the right, and to do so would bring unnecessary harm to another, the doctrine of abuse of rights will bar the exercise of the right. In Lambert v. Maryland Casualty Company, 418 So.2d 553, 561 (La.1982), appears the following:
The same reasons apply to plaintiffs' abuse of rights argument. Maryland had a legitimate and serious interest in the exercise of its legal rights at the time and in the manner it did so, reasonably believing that the corporation could not meet its obligations under its contracts and that continued financial support of the corporation would not prevent or reduce the ultimate loss to either the corporation or Maryland.
[Underscoring added].
In Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353, 1369 (La.1977), appears the following:
The exercise of a right (here, to discharge an employee while opting not to waive the nontermination requirement) without legitimate and serious interest, even where there is neither alleged nor proved an intent to harm, constitutes an abuse of right which courts should not countenance.
[Underscoring added].
In J. Cueto-Rua, Abuse of Rights, 35 La.L. Rev. 965, 1013 (1975) appears the following:
The doctrine of abuse of rights is in the making, it is `in fieri.' It is an important juridical-political element of modern civil law doctrine. Although there are still pending important questions concerning its scope as well as criteria for the definition of abusive use of rights, this we may safely say now: it will be difficult for a holder of an individual right, in most of the civil law jurisdictions today, to exercise such right to the detriment of other parties, just for the sheer sake of exercising it. At least a `serious and legitimate interest' will have to be shown in order to justify the exercise of its right.
[Bolding added].
See also Illinois Central Gulf Railroad Company v. International Harvester Company, 368 So.2d 1009, 1014 (La.1979); Real Estate Services, Inc. v. Barnes, 451 So.2d 1229, 1230 (La.App. 4th Cir.1984); Housing Authority of City of Abbeville v. Hebert, 387 So.2d 693, 697 (La.App. 3rd Cir.1980), writ denied, 394 So.2d 275 (La. 1980), rehearing of denied writ not considered, 396 So.2d 882 (La.1981).
Blue Cross contends that, since abuse of rights was not at issue in the district court, it should be granted a remand to present evidence which shows it had legitimate and serious reasons for exercising its contractual rights to Mr. Breland's *1224 detriment.[1] In particular, Blue Cross contends in its application for rehearing it can prove the following:
Blue Cross can prove that the facts are much different from those the court was required to infer to reach its decision. Mr. Breland was not singled out. On the contrary, after considerable company deliberations, the action to cancel many groups was taken in 1982 to reverse a several-year trend which had resulted in a depletion of Blue Cross' reserves from $22,381,858 (38 days of reserves) to $13,036,911 (17 days in reserves) by the end of 1981 (after two years of losses exceeding $17,000,000). During that time, Blue Cross attempted to cut its losses by increasing premiums. This had done no good. With each increase of premiums, the policyholders that were better risks dropped their coverage leaving as a whole a worse risk pool and leaving fewer people paying the premiums. These negative effects more than offset the benefit scheme by increasing the premiums. Blue Cross reserves were down to 11.9 days by June of 1982. The Blue Cross association standards require a minimum of three months reserves.
From studies made within the company, Blue Cross discovered that the vast bulk of the losses were caused by a certain segment of its business. Blue Cross found it necessary to cancel a number of groups in order to prevent imminent failure of the company. Since there are no guarantee associations in connection with the medical expense coverages, if contingency reserves had been exhausted, 700,000 Blue Cross insureds in Louisiana would have been left without any coverage.
In its supplemental brief on rehearing, Blue Cross contends as follows:
The evidence on Blue Cross's cancellation will reveal that it acted in good faith, fairness and based upon the legitimate interest of self-preservation as a corporate entity and thus continued ability to protect 700,000 insureds. Its admitted (both in contract and statute) right to cancel was not `abused'. Upon remand, the evidence would reveal that Blue Cross was in critical danger of going bankrupt. This situation resulted in a decision to discontinue a certain segment of Blue Cross' business. Previous renewal criteria were amended and those groups failing to fall within certain confines set by the underwriters were cancelled.
The law applicable to remands is set forth in Mack v. Southern Farm Bureau Casualty Insurance Company, 434 So.2d 594, 595-596 (La.App. 1st Cir.1983), writ denied, 449 So.2d 1346 (La.1984) as follows:
It is well settled that courts of appeal have the power under La.Code Civ.P. art. 2164 to remand a case for the introduction of additional evidence if grave injustice might result from failure to do so.... Such a remand without decision requires the existing judgment to be set aside.... Accordingly, although the power to remand rests within the discretion of the reviewing court, it should be exercised sparingly.... A remand for the introduction of additional evidence is warranted only when this new evidence is likely to affect the outcome of the case. [Citations omitted].
The instant case is not a situation where a litigant had an opportunity to present evidence on a known issue in the case and failed to do so, nor is it a case of newly discovered evidence. White v. Johns-Manville Sales Corporation, 416 So.2d 327 (La. App. 5th Cir.1982). Abuse of rights was not an issue until this case was on appeal and, thus, Blue Cross has not had an opportunity to present evidence to support viable defenses to the application of that doctrine. Fundamental fairness requires Blue Cross be given an opportunity to do so. Cf. Turner v. American Mutual Insurance Company, 390 So.2d 1330 (La.1980).
For the foregoing reasons, the judgments of the district court and this court *1225 are vacated and set aside, and this matter is remanded to the district court for further proceedings consistent with the law and the views expressed herein.[2] Blue Cross is to pay the cost of this appeal.
REMANDED.
NOTES
[1] In Tabb, it was also held that a group policy providing benefits for hospital and medical care was not a "health and accident" policy. This portion of the Tabb case was overruled in Rudloff v. Louisiana Health Services and Indemnity Co., 385 So.2d 767 (La. 1980).
[2] Breland did not pray for interest on his recovery in his petition, the district court judgment did not grant interest, and Breland did not assign as error the failure of the district court to give interest. La.C.C.P. art. 1921; Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584 (La.App. 1st Cir.1984).
[3] However, this law has been partially changed by Act 331 of 1984 which replaces Article 1934 with Article 1998 effective January 1, 1985.
[1] The only pertinent evidence introduced at the trial was the letter which terminated coverage.
[2] In Cabibi v. Louisiana Health Service & Indemnity Company d/b/a Blue Cross of Louisiana, 465 So.2d 56 (La.App. 4th Cir.1985), it was held La.R.S. 22:213 and Cataldie v. Louisiana Health Service and Indemnity Company, 456 So.2d 1373 (La.1984) were applicable to a group policy of health and accident insurance contrary to our holding on original hearing.