STOKER, Judge.
In this case defendant, Steven F. Nails, asks that benefits under a group health and accident insurance policy be extended *798 beyond its contractual or statutory terms under the abuse of rights doctrine. The policy was issued by the plaintiff, Massachusetts Mutual Life Insurance Company (insurer) to the defendant’s former employer, the Exxon Corporation. The coverage defendant seeks relates to continuing medical expenses resulting from an injury sustained while he was employed by Exxon. Defendant does not contend he is entitled to coverage for injury or illness that might arise after the date Exxon terminated his employment. He also concedes that under the language of plaintiff’s policy the plaintiff insurer is not required to cover his medical expenses arising from his accident which occurred prior to termination beyond a 12-month period (as specified in the policy) subsequent to termination. The defendant places his plea for extension of coverage solely on the doctrine of abuse of rights. The trial court rejected defendant’s contention.
We find the doctrine of abuse of rights is not applicable to the facts of this case. The insurer did not abuse its rights. We affirm the trial court.
This appeal is from a declaratory judgment in favor of the insurer. While an employee of Exxon corporation, defendant-appellant was involved in a non-work-related accident on June 3, 1984 which rendered him quadriplegic. Pursuant to its standard policy in such cases, Exxon terminated defendant’s employment six months after defendant became totally disabled. As the underwriter of Exxon’s group health insurance, plaintiff-insurer paid for all of defendant’s initial treatment. In accordance with its policy provisions, the insurer continued to pay for 12 months subsequent to termination of defendant’s employment. After the end of the 12-month period, on October 31, 1985, plaintiff-insurer began paying defendant’s medical expenses under protest and filed this action for a declaratory judgment seeking relief from any further obligation to provide coverage for medical expenses to be incurred in the future as a result of the quadriplegia. The trial court ruled in favor of plaintiff on a motion for partial summary judgment, holding that plaintiff was entitled to terminate benefits to defendant pursuant to the policy provisions.
Defendant appeals this judgment, contending that the termination of the insurance under the terms of the policy and the facts of this case constitutes an abuse of rights under Louisiana law.
THE ABUSE OF RIGHTS DOCTRINE
The applicability of the abuse of rights doctrine is not confined to insurance contract cases. In the recent case of Truschinger v. Pak, 513 So.2d 1151 (La.1987) the Louisiana Supreme Court made the following comments (page 1154) in a non-insurance case:
“The Abuse of Rights doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one’s otherwise judicially protected rights. In Morse v. J. Ray McDermott & Co., 344 So.2d 1353 (La.1977), this court recognized the Abuse of Rights doctrine. There, we held that an employer could not defeat his obligation to pay an employee the remaining portions of the employee’s compensation by terminating his employment without cause. Since that case, neither this court nor the courts of appeal have applied the doctrine.
“The Abuse of Rights doctrine has been applied only when one of the following conditions is met:
(1) if the predominant motive for it was to cause harm;
(2) if there was no serious or legitimate motive for refusing;
(3) if the exercise of the right to refuse is against moral rules, good faith, or elementary fairness;
(4) if the right to refuse is exercised for a purpose other than that for which it is granted.
Illinois Central Gulf Railroad Co. v. International Harvester Co., supra, Cueto-Rua Abuse of Rights, 35 La.L.Rev. 965 (1975).”
Some of the conditions listed above have been previously mentioned in health insurance cases. For the most part, however, *799 the cases have been decided on contract and statutory law. Such cases focus on the general type of situation we have in the case sub judice: the impact on existing claims of termination of coverage for some reason. The problem and jurisprudence is discussed by McKenzie and Johnson in 15 Civil Law Treatise, Insurance Law and Practice, Section 286 (pages 532-536 in the main volume and pages 45 and 46 in the current pocket part). These authors discuss the “run-off” of claims after the policy has come to an end, beginning with the case of Cataldie v. Louisiana Health Service & Indemnity Company, 456 So.2d 1373 (La.1984). In Cataldie the Louisiana Supreme Court briefly adverted to the abuse of rights doctrine, but found no need to decide that case under the doctrine as it concluded that a decision could be reached under contract and statutory law. In Cabibi v. Louisiana Health Service & Indemnity Co., 465 So.2d 56 (La.App. 4th Cir.1985) the Court of Appeal for the Fourth Circuit followed Cataldie as to a group policy without mention of the abuse of rights doctrine.
Two recent cases from this court have dealt with the problem presented in this case. Trevino v. Prudential Insurance Company, 504 So.2d 1179 (La.App. 3d Cir.1987), cert. denied, 506 So.2d 1230 (La.1987) and Harrington v. Prudential Insurance Co., 477 So.2d 1272 (La.App. 3d Cir.1985). These two cases were decided in favor of the insurers on contracual and statutory grounds only. In both cases Chief Judge Domengeaux dissented and suggested that, if contract and statutory law gave no succor to the plaintiffs in those cases, the abuse of rights doctrine might be applicable. In Breland v. Louisiana Hospital Services, Inc., 468 So.2d 1215 (La.App. 1st Cir.1984), the Court of Appeal for the First Circuit remanded a case to the district court for reconsideration under the abuse of rights doctrine and to allow the insurer to show, if it could, that it had legitimate and serious reasons for exercising its contractual rights. Otherwise, we have found no case which has gone off on the specific basis of the abuse of rights doctrine. Nevertheless, the jurisprudence appears to establish that in a given case, that is, where the facts and relationships warrant it, the abuse of rights doctrine may be appropriately applied. The question here, therefore, is whether this is such a case.
Before approaching that question, we emphasize again that defendant clearly and candidly concedes that the insurer’s position is correct insofar as it concerns the group insurance contract terms and statutory laws. Defendant seeks judicial intervention to avoid the consequences of the contract terms. Defendant asks for a court determination that public policy requires that the insurer be prohibited from exercising its contract rights.
ARE THERE CONDITIONS WHICH JUSTIFY APPLICATION OF THE DOCTRINE?
I
Was the causing of harm the predominant motive for the inclusion of the contract provision in the insurer’s group policy?
Unlike the situation in Cataldie, the termination of defendant’s coverage did not result from a policy change directed at defendant alone. It was not a change at all. Rather, the limiting provision was written into the policy and was one of which all Exxon employees should have been aware. It affected all employees equally and was not aimed at defendant alone. We take it that limiting coverage afforded through group health insurance policies is customary and usual. It has a rationale and purpose. The purpose of group insurance is that, by spreading the risk throughout the group, coverage may be obtained for all in the group which might not be available to some members of the group individually. Generally, group coverage is more economical than it would otherwise be.
The rationale of group insurance may be said to be that if one is to share in the benefits of group insurance, the insured must be a member of the group. Hence, upon leaving the group an insured ceases to be insured. It is reasonable for insurers *800 to provide for termination of coverage upon leaving of the group covered in order for it to apply appropriate management and actuarial principles. In this case the insurer’s contract provided for continued coverage for a 12-month period beyond cessation of employment with Exxon. Moreover, the policy provided for a conversion option which would have entitled defendant to convert to an individual policy providing coverage.
Under the circumstances discussed above, it can hardly, be said that enforcement of the insurance contract terms for termination is motivated by an intent to cause harm to defendant.
Was there no serious or legitimate motive for refusing to extend future coverage to defendant?
In view of what we have said above, the insurer has serious and legitimate motive for refusing further coverage. We reiterate that we are not confronted with a cancellation or change in coverage or rates after a contract is entered into. The contract feature in question existed before defendant’s injury. The insurer’s planning, including consideration of experience factors, must have gone into the design of the policy provisions and establishment of a rate structure.
Would the exercise of the right in question be against moral rules, good faith or elemental fairness?
The defendant’s principal argument for application of the abuse of rights doctrine is that the insurer’s policy provision terminating coverage 12 months after cessation of the employment relationship is in fact against moral rules, good faith and elemental fairness. Indeed, in defendant’s brief he “pleads with this court to provide relief!,] not only to himself[,] but to all Louisiana citizens who will be prejudiced by the trap for the unwary currently existing in the group health insurance policies in this state.” We believe defendant overstates his case. We are, as defendant recognizes, dealing with a group health insurance contract as opposed to an individual health insurance contract. Also, we are not confronted with a change, cancellation or alteration of contract terms after the contract is entered into. Nor are we confronted with a change, cancellation or alteration of contract terms made by an insurer as a reaction to an accident or illness in order to avoid or lessen an obligation to provide medical coverage. The provision in question is a self-executing provision stated in the contract at its inception and not a new provision imposed after the risk was realized.
Defendant relies heavily on the Cataldie and Breland cases to support his contention that the contract provision under consideration here is against moral rules, good faith and elemental fairness. Cataldie and Breland both involved cases where changes or cancellations were made by an insurer (Blue Cross in both instances) after a risk materialized pursuant to a policy provision which permitted Blue Cross to make changes or cancellations upon short notice. Such circumstances distinguish the Cataldie and Breland cases from the case sub judice because the provision in question was in fact not a provision born, con-fected or effected subsequent to the incurring of the risk, i.e., Steven Nails’ injury and need for continuing medical services. It preexisted the realization of the risk. Moreover, it was accompanied by a conversion option. For such reasons moral rules, bad faith and unfair conduct do not come into play as they did in Cataldie and Bre-land.
Cataldie was a case in which the defendant (Blue Cross) issued an individual medical policy with family coverage to the claimant. Over two years after issuance of the policy, the insured’s daughter developed brain cancer which caused her death about 18 months later. Blue Cross invoked contract rights to drastically modify the policy as to premium rates and coverage to the extreme detriment of the insured. The Louisiana Supreme Court gave relief to the insured by applying a statutory provision of the Louisiana insurance code which provided that any cancellation “shall be without prejudice to any claim originating prior thereto.” LSA-R.S. 22:213(B)(7) as it then read. The Supreme Court also relied on *801 the wording of the Blue Cross policy. The Supreme Court ruled in the Cataldie case that the statutory provision prevented the action taken by Blue Cross. In the course of its opinion the Supreme Court observed:
“Blue Cross bargained for and reasonably should have expected to be exposed to this risk. By waiting until the risk had been realized before bringing about cancellation of the policies, Blue Cross made it impossible for Cataldie to obtain insurance for his daughter Amie from any other carrier. The insurer’s action in this case is equally as unconscionable as any which the legislature aimed to prevent by the legislation; the parties’ expectations are as reasonable as any the statute is designed to enforce; and Catal-die’s reliance to his detriment has produced as desperate a set of circumstances as any contemplated by the lawmakers. There is no valid reason to suppose that the legislature intended to exclude Cataldie’s case from the ambit of the statute’s protection.”
In Cataldie the Supreme Court alluded to the abuse of rights doctrine but declined to consider applying it because it grounded its decision on contract and statutory law. However, from the language quoted above, we may infer that the action of Blue Cross caused the Supreme Court to feel that the case presented considerations of moral rules, good faith and elementary fairness. Nevertheless, the legislature appears to have moved to undercut to some extent the statutory basis for the Cataldie holding. Act 249 of 1985 made changes in LSA-R.S. 22:213(B)(7) and 22:215(A)(1). Now, instead of providing that there can be no prejudice to “any claim originating prior thereto,” it is now provided that the insurer is not liable for expenses incurred for services rendered subsequent to cancellation. Presumably, any judicial consideration for application of the abuse of rights doctrine in a Cataldie-type context would also require consideration of this expression of legislative policy. See the discussion in McKenzie and Johnson, supra.
The other case on which defendant Nails heavily relies is the Court of Appeal, First Circuit case of Breland v. Louisiana Hospital Services, Inc., supra. This was a case involving a group health and accident policy issued to the claimant’s employer. Defendant in his brief directs our attention to the following language from Breland, pages 1220 and 1221:
“Although Blue Cross has the contractual right to terminate Breland’s policy and avoid payment of benefits for medical services after the date of cancellation, we belive that it would be an abuse of rights to judicially allow such under the particular facts and circumstances of this case. We are mindful that the abuse of rights doctrine should be used sparingly. Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1977); Maurin-Ogden-1978 Pinhook Plaza v. Wiener Corporation, 430 So.2d 747 (La.App. 5th Cir.1983); Housing Authority of City of Abbeville v. Hebert, 387 So.2d 693 (La.App. 3rd Cir.1980) writ denied, 394 So.2d 275 (La.1980). However, to fail to apply the doctrine in the instant case and allow Blue Cross to enforce its contractual rights would leave Breland in a ‘desperate ... set of circumstances’ wherein he will be ‘unable to obtain desirable insurance in any reputable company’. Such a result is ‘unconscionable’ to us, and we elect to apply the doctrine to bar Blue Cross from exercising its contractual rights in such a manner to Breland’s detriment.”
In Breland Blue Cross issued its group policy to Breland Foods, Inc. of which the plaintiff, Ray W. Breland, was an employee. The initial policy was issued in 1964 and was canceled by Blue Cross in 1982. During the policy’s existence plaintiff developed renal cancer, and his condition was worsening at the time Blue Cross canceled its group policy. Blue Cross had the right to cancel the contract under the terms of the policy. On original hearing the First Circuit held that the Cataldie solution was not applicable because a group health and accident policy was involved and the statutory provision applied in Cataldie to a non-group policy did not apply to group policies. The First Circuit applied the abuse of rights doctrine to require Blue Cross to *802 continue coverage for Breland’s treatment for his renal cancer. On rehearing the case was remanded to the trial court to allow Blue Cross to present evidence in defense on the issue of applicability of the abuse of rights doctrine, i.e., to attempt to show that Blue Cross had legitimate and serious reasons for exercising its contractual rights.
The foregoing discussion of Cataldie and Breland show that they are distinguishable on their facts. In the case sub judice Massachusetts Mutual Life Insurance Company has not sought to change the rules of the game after the risk was incurred. No change or cancellation of the policy has been made. The contract provisions are the same now as they were before Steven Nails had his accident. The insurer simply seeks to enforce the provisions as they read when Exxon (and Nails) became insured under the policy. We fail to see that the insurer seeks to violate any moral rules. There is no element of bad faith under the circumstances, and there is no elementary unfairness. The doctrine of abuse of rights is not appropriate in this case.
The automatic provision for termination in the insurer’s policy here cushioned the loss of coverage by giving Nails coverage for 12 months beyond the date of his actual separation from Exxon. As has been mentioned, Nails also had the option of converting coverage under the group policy to an individual policy.
The circumstances of this case do not present action of the type deemed unconscionable in Cataldie and Breland.
Does the insurer seek to exercise its rights for a purpose other than that for which it was granted?
This question requires no discussion. We earlier referred to the purpose of the policy provision in question. Clearly the plaintiff insurer’s request for a declaratory judgment is in pursuance of that purpose.
CONCLUSION
What happened in this case highlights a hazard inherent in group health and insurance policies. As a matter of public policy the legislature might require continued coverage as to all risks which materialize prior to the cessation of an insured’s membership in a group. However, under typical provisions such as are under consideration here, no advantage is taken of insureds, and application of the abuse of rights doctrine is not in order. Any general relief as to the feature in question should be a matter for legislative consideration rather than judicial rewriting of policies.
In view of the conclusion we reach, there is no need to discuss the defendant’s request for an award of attorney’s fees.
Accordingly, the judgment of the trial court dated June 1, 1987 is affirmed. The costs of this appeal are assessed to defendant-appellant.
AFFIRMED.
DOMENGEAUX, J., dissents and assigns reasons.