456 So.2d 1373 (1984)
Sam V. CATALDIE, Jr., Individually and as Administrator of the Estate of his Minor Child, Amie Cataldie
v.
LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY.
No. 83-C-1750.
Supreme Court of Louisiana.
September 10, 1984.
Rehearing Denied December 6, 1984.
Alonzo P. Wilson, Trimble, Randow, Percy, Smith, Wilson & Foote, Alexandria, for applicant.
Joseph T. Dalrymple, Antoon & Dalrymple, Alexandria, for respondent.
DENNIS, Justice.
The insured, Sam V. Cataldie, Jr., brought this action for a declaratory judgment ordering that the insurer, Louisiana Health Service and Indemnity Company, popularly known as Blue Cross of Louisiana, must continue to afford coverage for hospital, surgical and major medical services related to the brain cancer of his daughter, Amie Cataldie, as provided for in an otherwise cancelled non-group family health and accident policy. The district court rendered judgment in favor of Cataldie and Blue Cross appealed. The court of appeal amended in part and affirmed, 433 So.2d 367 (1983), holding that after Cataldie's daughter contracted a continuing illness causing the incurrence of expenses covered by the health insurance policy, public policy would not permit Blue Cross to exercise its contractual rights to cancel or drastically modify the policy. We affirm.
Sam V. Cataldie, Jr. and Blue Cross entered a non-group contract of health and *1374 accident insurance with endorsements effective September 1, 1978, insuring the payment of hospital and major medical services for Cataldie's family. At its inception, the policy provided for $250,000 major medical coverage, a $100 deductible, and a $244.67 quarterly premium. During succeeding years Blue Cross exercised its right under the contract to "change the fees for or the benefits of the contract ... at any time" on several occasions. As of March 1, 1980, Blue Cross increased the quarterly premium to $256.56. As of March 15, 1981, Blue Cross raised the major medical deductible to $300.000, the hospital deductible to $50.00, the quarterly premium to $330.96.
Cataldie's three year old daughter, Amie, was diagnosed as having brain cancer in April of 1981, and treatment of the cancer was commenced. Deposition testimony shows that this treatment consisted of surgery to remove a malignancy. During the operation water collected in the child's brain forcing the surgeons to insert a shunt for drainage. Only a portion of the tumor was excised, and the child was left partially paralyzed. Radiation therapy, necessary to destroy the remainder of the malignancy, resulted in a brief remission, but subsequent spinal taps showed reactivation. Amie continued to require brain scans, spinal taps and chemotherapy as her condition deteriorated. As of May 15, 1982, Blue Cross had paid $41,266.21 for expenses in connection with Amie's illness.
As of January 1, 1982, Blue Cross increased the quarterly premium to $346.02; as of May 15, 1982, Blue Cross reduced the major medical coverage to a total of $20,000 (limited to a maximum of $10,000 in one year); increased the deductible to $5,000, and increased the quarterly premium to $614.64. Thus, since the policy's inception Blue Cross decreased major medical coverage 92%, while increasing the deductible 5000% and the quarterly premium over 250%.
Cataldie was forced by Blue Cross's last increase in premiums to agree to a cancellation of his policy because he could not afford to insure his family at those rates. Instead, he entered a contract with Blue Cross to insure only his daughter, Amie Cataldie, under a single coverage policy with a $236.46 quarterly premium and with the drastically reduced coverage described.
This suit for declaratory judgment that coverage for health and major medical services necessitated by Amie's cancer be continued after cancellation was filed on May 19, 1982. Also, on May 25, 1982, Cataldie's attorney addressed a letter to Blue Cross stating that Cataldie had filed a petition for declaratory judgment of their contractual relationship, that his acceptance of the terms and payment of the premiums of the new policy was under protest, and that he reserved all his rights and remedies against Blue Cross. A new non-group comprehensive major medical contract dated August 5, 1982 was issued covering Amie Cataldie effective June 1, 1982.
Pursuant to a stipulation of facts the case was submitted to the trial court which subsequently rendered judgment in favor of Cataldie reinstating the terms and conditions of the policy as it existed at its inception covering his whole family. The court of appeal amended the judgment ordering that the policy benefits provided under the contract as it existed prior to May 15, 1982 be reinstated as to Amie Cataldie only, with corresponding adjustment in premiums.
Amie Cataldie died October 3, 1982.
Insurance is a business affected with the public interest and it is the purpose of the insurance code to regulate it in all its phases. La.R.S. 22:2. No person shall transact a business of insurance in this state without complying with the insurance code. La.R.S. 22:3.
Blue Cross' action in drastically increasing premiums while decreasing and altering coverage obviously caused the cancellation of the policy. Under these circumstances the insurer must bear legal responsibility for the cancellation, although the *1375 parties have stipulated that the plaintiff cancelled the policy. Furthermore, the legal principles which we conclude govern this case are applicable to a cancellation by either the insured or insurer. La.R.S. 22:213(B)(7).
The insurance code gives the health insurance policyholder very substantial protection in the area of cancellations and related matters. If the insurer wishes to insert a clause respecting the matter of cancellation, it must be "not less favorable" to the insured than the following:
"Cancellation: The insurer may cancel this policy at anytime by written notice delivered to the insured, or mailed to his last address as shown on the records of the insurer, and shall refund the pro rata unearned portion of any premium paid. Such cancellation shall be without prejudice to any claim originating prior thereto. The insured may likewise cancel this policy on the above terms." La.R.S. 22:213(B)(7). (Emphasis Added)
This clause was adopted with only minor deviations from the Uniform Individual Accident and Sickness Policy Provisions Law. Meyer, Life and Health Insurance Law, § 13.1 (1972). It was recommended by the National Association of Insurance Commissioners apparently because cancellation of health insurance is a source of dissatisfaction with a not inconsiderable segment of the public. See, R.D. Young, "Insurance Contracts: The Discontinuance Question," 30 Ins.Coun.J. 146 (1963).
Blue Cross attempted to insert in its policy cancellation rights less favorable to the insured than the statutory provisions. The major medical endorsement affords post cancellation coverage for a continuing illness or injury but only for a minimal amount or duration: "If a Member is incurring Major Medical Expenses for an illness or injury when this Endorsement is terminated, the Plan agrees to continue coverage under this Endorsement for that condition up to a maximum of $100.00 or for a 45-day period, whichever of these circumstances should be realized first."[1]
Any provision of a policy which is in conflict with the statutes is amended by law to conform with statutory requirements. La.R.S. 22:213(B)(8). Accordingly, we must analyze Blue Cross's cancellation clause to determine precisely which, if any, of its provisions conflicts with the statutes and therefore must be considered as having been amended by law.
The provision of the cancellation clause which provides for continuing coverage for a continuing illness or injury is not in conflict with or less favorable than the statutory requirement. However, the special limitation of that coverage to $100 or 45 days, whichever occurs first, is a provision that conflicts with and is less favorable than that required by law. The statutory safeguard against the prejudice of any claim originating prior to cancellation contains no limitation as to time or amount. La.R.S. 22:213(B)(8).
Accordingly, the Blue Cross cancellation clause is amended by law and understood to provide that if any member is incurring major medical expenses for an injury when the policy and endorsement are terminated, coverage for that condition shall not be prejudiced by cancellation. When we apply this clause, as amended, to the facts of this case, we conclude that the correct result has been achieved by the trial court judgment, as amended by the court of appeal.
Although our decision is based on both La.R.S. 22:213(B)(7) and the particular wording of the Blue Cross cancellation *1376 clause, it would be no different if the cancellation clause contained a statement identical to the minimum safeguard required by law: "Such cancellation shall be without prejudice to any claim originating prior thereto." Perhaps in a narrow sense of esoteric legal doctrine Cataldie's claim originating before cancellation could be said to be restricted to medical bills rendered on or before this date. We do not believe the statute should be given such a confined interpretation. The words of a law are generally to be understood in their most usual signification, attending mostly to the general and popular use of words. La.C.C. art. 14. In this sense, in the popular use and usual meaning of words, Cataldie had a claim for major medical services related to his daughter's cancer of which the insurer was notified and which originated before it cancelled the policy.
Furthermore, the history of the measure indicates it was formulated by the National Association of Insurance Commissioners to serve as a safeguard against an unconscionable cancellation of health insurance policies by an insurer after the occurrence of illness or injury but before the loss had fully accrued. 30 Ins.Coun.J. at 154. Cataldie bargained for and reasonably expected to obtain $250,000 in major medical insurance in the event a catastrophic disease should attack his family. Blue Cross bargained for and reasonably should have expected to be exposed to this risk. By waiting until the risk had been realized before bringing about cancellation of the policies, Blue Cross made it impossible for Cataldie to obtain insurance for his daughter Amie from any other carrier. The insurer's action in this case is equally as unconscionable as any which the legislature aimed to prevent by the legislation; the parties' expectations are as reasonable as any the statute is designed to enforce; and Cataldie's reliance to his detriment has produced as desperate a set of circumstances as any contemplated by the lawmakers. There is no valid reason to suppose that the legislature intended to exclude Cataldie's case from the ambit of the statute's protection.
When confronted with this type of situation all modern authorities we have found conclude that the policy cannot be terminated as to illness, injury or condition arising before the insurer's cancellation. They differ only as to the theory of the decision: AmbiguitySparks v. Republic National Life Insurance Co., 132 Ariz. 529, 647 P.2d 1127 (1982), cert. den. 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982) (Cancellation of medical benefits policy); Public PolicyBrown v. Blue Cross & Blue Shield of Mississippi, 427 So.2d 139 (Miss.1983) (cancellation of medical benefits); Gulf Guaranty Life Insurance Co. v. Kelley, 389 So.2d 920 (Miss.1980) (attempted cancellation of credit life policy following insured's heart attack); Detrimental RelianceMutual Ben. Life Ins. Co. v. Robison, 54 F. 580 (C.A.Iowa) aff'd 58 F. 723 (7th Cir.1893); Implied Covenant of Good FaithSpindle v. Travelers Insurance Co., 136 Cal.Rptr. 404, 66 Cal.App.3d 951 (2d Dist.1977) (cancellation of medical malpractice policy). Reasonable Expectations of Insured HonoredSee, Keeton Insurance Law Rights at Variance with Policy Provisions, 83 Harv.L.Rev. 1961 (1970).
See also, Blue CrossBlue Shield of Alabama v. Turner, 43 Ala.App. 542, 195 So.2d 807 (1966) (pregnancy benefits payable despite prior cancellation of group hospital and medical expenses policy); National Life & Accident Ins. Co. v. Dove, 167 S.W.2d 257 (Tex.Civ.App.1942) (cancellation of health benefits not operative as to benefits for continuing illness). Dossey v. Life & Casualty Ins. Co. of Tenn., 177 So. 427 (La.App. 2d Cir.1937) (right to cancel life, health, and accident policy suspended as per insurance contract for disability existing at notice of cancellation); National Life Ins. Co. v. Jackson, 18 Ga.App. 494 (Ga.App.1916).
These theories involve many of the considerations which we would employ in deciding such a case as this under the abuse of rights doctrine. See e.g., Cueto-Rua, "Abuse of Rights" 35 La.L.Rev. 965 (1975); *1377 Comment, 42 La.L.Rev. 210 (1981). Since we have concluded that our decision is governed by the contract and statutory law, there is no need for us to consider that doctrine in this case.
Out of an abundance of caution, we add that our application of La.R.S. 22:213(B)(7) to the insurance contract does not make Cataldie's policy uncancellable for any purpose other than to prevent prejudice to a claim which originated before cancellation. Otherwise, the policy in this case was fully cancellable, in contrast with a non-cancellable or guaranteed renewable policy, which may not be altered by the insurer except to adjust rates by classes. La.R.S. 22:214. This observation is obvious from a casual reading of the statutes but is added to correct a misguided impression of the defendant as relfected in the brief of its counsel.
AFFIRMED.
DIXON, C.J., dissents.
MARCUS and BLANCHE, JJ., dissent and assign reasons.
BLANCHE, Justice (dissenting).
The policy purchased by plaintiff was a medical expense policy. The basic coverage was subject to cancellation or modification upon 30 days written notice at the option of the insurer. Thus the coverage bargained for was a policy which would provide payment to the insured of medical expenses incurred for a period of 30 days. Plaintiff could have bargained for insurance that could not be cancelled or modified after 30 days, but instead rejected such coverage in writing in the application.
The cancellation provision was incorporated in the policy in accordance with law. La.R.S. 22:212(8). Furthermore, the cancellation could not and did not prejudice any claim (medical expenses) originating prior thereto, as all such expenses ($41,226.21) were paid for the period prior to the modification of the policy to which the parties agreed on May 15, 1982. The policy does not purport to cover all expenses incurred as a result of a diagnosed illness.
The majority opinion alters a valid contract between the parties and provides coverage for risks not contemplated in the policy. I respectfully dissent.
MARCUS, Justice (dissenting).
The issue in this case is whether an insurer's reduction of coverage and increase in fees on a cancellable major medical insurance policy is permissible after an insured under the policy contracts cancer.
Sam V. Cataldie, Jr. entered into a contract of insurance with Louisiana Health Service & Indemnity Company (Blue Cross) effective September 1, 1978. This contract, which covered Cataldie, his wife and their daughter Amie, was entitled a "Non-Group Hospital & Surgical Medical Contract." It covered health care benefits, "health care" being defined in the contract as "any services provided under the terms of the Contract which are rendered to a Member in the interest of his health."
The policy further provided that "[t]he Plan may change the fees for or the benefits of the Contract or may cancel the Contract at any time, by giving 30 days written notice to the Member at his last address as shown by the records of the Plan." On the first page of the policy, the contract stated, "The Plan or the Member may cancel the Contract with 30 days written notice." On the application for the insurance, Cataldie chose not to take a guaranteed renewable policy by signing below where a box stating "No" was checked under a line stating "Guaranteed Renewable."
At its inception (September 1, 1978), the policy provided $250,000 in coverage with a $100 deductible and a quarterly premium of $244.67. As of March 1, 1980, the premium per quarter was increased to $256.56. As of March 15, 1981, Blue Cross increased the premium to $330.96 a quarter and raised the major medical deductible to $300 *1378 with a $50 hospital deductible. On April 19, 1981, Amie Cataldie was diagnosed as having terminal brain cancer. As of January 1, 1982, the premium was again raised, this time to $346.02 a quarter. Finally, after timely providing Cataldie with written notice, Blue Cross reduced coverage effective May 15, 1982[1] from $250,000 to $20,000 lifetime coverage with a maximum coverage of $10,000 a year. Blue Cross also increased the deductible to $5,000 and raised the quarterly premium to $614.64.
Sam Cataldie responded to this modification of his policy by filing, individually and as administrator of the estate of his minor child Amie, a petition for declaratory judgment in the district court. The petition sought a declaration that "the terms and conditions of the policy of hospitalization insurance existing between [him and Blue Cross] and on behalf of Amie Cataldie at the time her subject disease commenced remain the same and that petitioner is entitled to recover medical expenses incurred on behalf of his daughter for the treatment of the cancer and its complications under those same terms and conditions." In addition, on June 1, 1982, Sam Cataldie dropped his family coverage, leaving only Amie insured under a single coverage policy costing $236.46 a quarter. Amie died on October 3, 1982.
The trial judge rendered judgment in favor of Cataldie and against Blue Cross ordering all health care benefits provided to the family under the contract at its inception[2] and the original premium[3] to be reinstated. Blue Cross appealed. The court of appeal affirmed in part and reversed in part.[4] The court held that public policy mandated that an insurer cannot arbitrarily and without just cause terminate a cancellable hospitalization policy as to a continuing illness for which the insurer had been paying benefits immediately prior to cancellation. The court found that the modifications made by Blue Cross to Cataldie's policy constituted an effective termination of the policy because the alterations were so drastic that it would be unreasonable for the insured to keep the policy in force. The court ordered the health care benefits provided under the contract as it existed prior to May 15, 1982[5] reinstated as to Amie Cataldie only and adjusted the premium to $161.73 per quarter as the single coverage premium equivalent to the group policy premium in effect at that time. Upon Blue Cross' application, we granted certiorari to review the correctness of that decision.[6]
An insurance policy is the contract between the parties, and, like all other contracts, it is the law between them. Muse v. Metropolitan Life Insurance Co., 193 La. 605, 192 So. 72 (1939); La.Civ.Code art. 1901. When the words of the contract are clear and explicit, the courts are bound to give legal effect to all such contracts. La. Civ.Code art. 1945. The policy between Blue Cross and Cataldie plainly provided that Blue Cross could cancel or change the fees for or the benefits of the contract at any time by giving Cataldie thirty days written notice. Such an unambiguous provision should be given full effect when not contrary to any provision of law.
The Louisiana Insurance Code provides the guidelines by which insurers may make *1379 health and accident policies cancellable. La.R.S. 22:213(B)(7) permits the inclusion in a policy of health and accident insurance of a provision giving the insurer the right to cancel a policy at any time by written notice to the insured provided such cancellation be without prejudice to any claim originating prior thereto.[7] La.R.S. 22:212(8) requires that in any case in which the policy is subject to cancellation at the option of the insurer, a statement so informing the policyholder must be printed prominently on the first page of the policy.[8] La.R.S. 22:214.1 mandates that health and accident insurers offer applicants the option to purchase at extra cost a policy that guarantees the insured that the policy will not be cancelled or any of its terms other than rates changed until the insured reaches age sixty five.[9]
The insurer in this case met all of these requirements. The clause permitting cancellation substantially followed the wording approved in La.R.S. 22:213(B)(7). Blue Cross complied with La.R.S. 22:212(8) by printing on the first page of the insurance contract a statement notifying the insured that the policy was cancellable at the insurer's option. And, in accordance with La. R.S. 22:214.1, Blue Cross gave Cataldie the option of taking a "guaranteed renewable" policy, but Cataldie chose not to take it as is evidenced by his signature in the appropriate space on the application form. Moreover, such cancellation was without prejudice to any claim originating prior thereto for reasons hereinafter stated. La. R.S. 22:213(B)(7). Hence, Blue Cross was legally empowered to exercise its cancellation clause.
However, in this case Blue Cross did not cancel Cataldie's policy; rather it chose to exercise its contractual right to modify the policy. Under the contract between Blue Cross and Cataldie, the parties agreed that Blue Cross could unilaterally change the fees for or the benefits of the policy upon thirty days written notice to Cataldie. The Insurance Code provides no limits on an insurer's right to alter the terms of a health and accident policy. However, the general principle of insurance law is that there can be no material modification of the terms of a policy absent mutual consent of the parties. 17 Couch on Insurance 2d § 65.3, at 244 (1983); Cooper v. Conagra, Inc., 340 So.2d 661 (La.App. 2d Cir.1976); State v. Preferred Accident Insurance Co. of New York, 149 So.2d 632 (La.App. 1st Cir.1963); Isadore v. Washington Fire & Marine Insurance Co., 75 So.2d 247 (La. App.Orl.Cir.1954). In this case, because *1380 Cataldie had the right to cancel the insurance policy, he was not forced to accept the modification imposed by Blue Cross. Instead, he had the option to either accept the change or reject it by cancelling the contract. He chose to accept the May 15, 1982 modification by paying the increased premium to retain coverage for his daughter Amie. Hence, I consider that the May 15, 1982 modification went into effect and was fully valid and enforceable.
However, the modification cannot prejudice any claim existing prior to the effective date of that change. See 17 Couch on Insurance 2d § 65.13 (1983). Under the policy between Blue Cross and Cataldie, it was immaterial that Amie was diagnosed as having cancer before May 15, 1982 because developing a sickness was not the insured-against risk. The insured-against risk in this particular contract was the rendering of medical services to an insured. Cataldie only had a vested right to have Blue Cross pay for services rendered before May 15, 1982 under the terms of the contract in effect at that time. Thus, Blue Cross did not divest Cataldie of any vested right by covering services rendered after May 15, 1982 under the modified terms of the contract. Moreover, even assuming cancellation of the policy by the insurer, for the same reasons I do not consider that Cataldie suffered prejudice to any claim originating prior thereto in violation of La. R.S. 22:213(B)(7).
I disagree with the court of appeal's opinion that public policy prevents the arbitrary termination or drastic modification of an insurance policy as to a continuing illness for which the insurer had been providing benefits immediately prior to the cancellation or modification. Just as an insured may not defeat an insurer's right not to renew a policy by asserting that the insurer's exercise of its option was arbitrary and capricious, Gautreau v. Southern Farm Bureau Casualty Insurance Co., 429 So.2d 866 (La.1983), neither can the insured here defeat the insurer's right to modify the policy by requiring the insurer to show a just cause for the modification. The Insurance Code imposes no such limits on an insurer's right to modify a policy, and I would not add any restrictions under the guise of public policy. The legislature is vested with a wide discretion in determining what the public interest requires, and the courts should not disturb this exercise of a legislative function. Pepsodent Co. v. Krauss Co., 200 La. 959, 9 So.2d 303 (1942).
Consequently, I disagree with the majority opinion. I consider the May 15, 1982 modification of the insurance contract between Blue Cross and Sam V. Cataldie to be valid and enforceable.
Accordingly, I respectfully dissent.
NOTES
[1] Under the terms of the preamble of the major medical endorsement, the major medical endorsement provisions supersede any conflicting terms of the basic policy. The basic policy permits the insurer to cancel without affording any protection of an insured's existing claim. Therefore, as between the basic contract and the major medical endorsement, the endorsement governs cancellation.
[1] As of May 15, 1982, Blue Cross had paid out $41,266.21 to cover services rendered to Amie Cataldie. Sam Cataldie had paid premiums totaling $4,189.08 as of this date.
[2] The trial judge mistakenly reinstated the contract as of August 14, 1978 (date of application) rather than on its effective date of September 1, 1978 as stipulated by the parties.
[3] The trial judge identified this original premium as being $246.13 per quarter when in fact the parties had stipulated that it was $244.67 per quarter.
[4] 433 So.2d 367 (La.App. 3d Cir.1983).
[5] The court preserved the January 1, 1982 increase in the premium even though it occurred after Amie's cancer was diagnosed because the court found that increase to be justifiable.
[6] 440 So.2d 752 (La.1983).
[7] § 213. Health and accident policy provisions

. . . .
B. Other provisions (optional)No such policy shall be delivered or issued for delivery containing provisions respecting the matters set forth below unless such provisions are, in substance, in the following forms, or, at the option of the insurer, in forms which in the written opinion of the commissioner of insurance are not less favorable to the policyholder:
. . . .
(7) Cancellation: The insurer may cancel this policy at any time by written notice delivered to the insured, or mailed to his last address as shown by the records of the insurer, and shall refund the pro rata unearned portion of any premium paid. Such cancellation shall be without prejudice to any claim originating prior thereto. The insured may likewise cancel this policy on the above terms.
See also La.R.S. 22:636.
[8] § 212. Form of policy

. . . .
(8) In any case where the policy is subject to cancellation or renewal at the option of the insurer, there shall be prominently printed on the first page of such policy a statement so informing the policyholder.
[9] § 214.1. Guaranteed renewable to age sixty-five clause

A. Every insurer authorized to issue policies of health and accident insurance in this state shall offer to eligible applicants, at an additional cost, to include a provision in the insurer's ordinary health and accident insurance policy which would guarantee to the insured that the policy shall not be cancelled, nor any of its terms changed, except for rating purposes within a defined class or category, up to age sixty-five of the insured as long as the insured continues to pay the designated premiums on that policy.