504 So.2d 1179 (1987)
Jose M. TREVINO, etc., Plaintiffs-Appellants,
v.
PRUDENTIAL INSURANCE COMPANY, et al., Defendants-Appellees.
No. 85-845.
Court of Appeal of Louisiana, Third Circuit.
March 23, 1987.
Writ Denied May 29, 1987.
Charles A. Riddle, III, Marksville, for plaintiffs-appellants.
Provosty, Sadler & Delaunay, F. Rae Swent and Ronald J. Fiorenza, Alexandria, for defendants-appellees.
Before DOMENGEAUX, KNOLL and BROYLES[*], JJ.
*1180 TED R. BROYLES, Judge Pro Tem.
Plaintiffs, Jose and Vicki Trevino, husband and wife, appealed from the judgment of the district court denying their claim for medical expenses under a group insurance policy issued by Prudential Insurance Company (Prudential) to Noble Drilling Company (Noble) for the benefit of Noble's employees. The policy included provisions for maternity benefits. The essential facts are not in dispute:
Jose Trevino was an employee of Noble for about three years until May 7, 1982, when his employment was terminated. His wife, Vicki, had conceived in March of 1982, at which time he was employed, of course. She gave birth to a child, Jose Trevino, Jr., on December 24, 1982, or about seven months after the employment was terminated. She sought no medical attention, or prenatal care, until October, 1982. Mrs. Trevino incurred medical expenses in the aggregate sum of $1,659.00.
The pertinent provisions of the insurance policy with reference to termination are as follows:
"The Employee Insurance of an Employee under a coverage will automatically terminate when:
(1) he ceases to be a member of the coverage classes for the insurance because of termination of employment...".
. . . . .
"Termination of Employment-For insurance purposes, an Employee's employment will be considered to terminate when he is no longer actively engaged in work on a full-time basis for the Employer. However, the Group Policy has provisions under which the Policyholder may consider the Employee as still employed within the coverage classes for the insurance, subject to any time limits or other conditions stated in the Group Policy."
. . . . .
"An Employee's Dependents Insurance will terminate under the circumstances described in the section `Termination of Employee Insurance' as though that section's reference to `Employee Insurance' were a reference to `Dependents Insurance'."
In the 1979 policy rider (Exhibit D-1-B) there is this provision:
"F. Termination of Dependents Insurance.
An Employee's Dependents Insurance will automatically terminate when:
(1) he ceases to be a member of the coverage classes for the insurance because of termination of employment..."
Under the same rider there is a provision for the extension of coverage beyond termination:
"E. Extension of Coverage
If a person ceases to be a covered individual, his coverage will be extended as stated below.
(1) If, at such cessation, the person is totally disabled from an illness other than pregnancy and is under the care of a Physician, coverage for the person pertaining solely to that illness will be extended during such total disability while under such care, but not beyond the end of the Benefit Year next following that in which the cessation occurs.
(2) Coverage in connection with a pregnancy of such person existing at such cessation will, to the extent that such coverage would be provided in accordance with (2) of the Charge Limitations for Certain Illnesses of Section D had such cessation not occurred, be extended for the duration of the pregnancy and, if she is confined in a Hospital at termination of the pregnancy, for the further period that she is continuously so confined on account of the pregnancy."
Careful reading of the charge limitations to which the foregoing extension provisions refer reflects that pregnancy was covered only when the charges related to surgery, or to one of the abnormal conditions enumerated, as follows:
"Charge Limitations for Certain Illnesses:
(2) Pregnancy.

*1181 Charges incurred in connection with a covered individual's pregnancy will be included, subject to the following paragraph, only if she is an Employee or the wife of an Employee and if they are
(a) charges for a surgical procedure, or related charges incurred thereafter, which is (i) a caesarean section performed six months or more after the inception of pregnancy, or (ii) for extra-uterine pregnancy or (iii) for complications requiring intra-abdominal surgery after termination of pregnancy; or
(b) charges incurred, during confinement in a Hospital, solely for the treatment of hyperemesis gravidarum (pernicious vomiting of pregnancy) or of eclampsia (toxemia with convulsions)."
Appellants contend, however, that denial of coverage under these circumstances is contrary to public policy citing Cataldie v. Louisiana Health Service & Indemnity Company 456 So.2d 1373 (La.1984), and Cabibi v. Louisiana Health Service Indemnity Company 465 So.2d 56 (La.App. 4th Cir.1985).
In Cataldie, supra, the plaintiff sued for continued hospital and major medical coverage for his 3 year old daughter, a victim of brain cancer. The defendant insurer, commonly known as Blue Cross, had exercised its contractual privilege to change fees and benefits on several occasions and to such an extent that, from the inception of the policy, the major medical coverage had decreased 92%, the deductible was increased 500%, and the premium had increased over 250%. As a consequence the insured, Cataldie, consented to a cancellation of the policy, and took out a policy covering his daughter with "drastically reduced coverage". The Supreme Court, by 4-3, affirmed in favor of plaintiff on the abuse of rights doctrine, citing Louisiana Revised Statute 22:213 B(7), which provides, in reference to cancellation, in part as follows:
"Such cancellation shall be without prejudice to any claim originating prior thereto."
Cataldie is not controlling for at least two reasons:
(1) A group policy was not involved therein. Louisiana Revised Statute 22:221 provides in part as follows:
"The provisions of R.S. 22:212 through 22:214 shall not apply to group or blanket health and accident insurance policies...";and
(2) the present case presents no circumstances which leads to the conclusion that the insurer forced the cancellation of the policy by markedly increasing premiums and reducing coverage. On the contrary the termination here occurred by virtue of the terms of the policy when plaintiff ceased to be an employee.
The 4th Circuit in Cabibi, supra, followed Cataldie and held that the insurer's cancellation of a group insurance policy did not terminate benefits to plaintiff, diagnosed as a diabetic prior to cancellation, at least insofar as expenses incurred for treatment of that disease. While recognizing that Cataldie concerned an individual health insurance policy, the Court in Cabibi applied it to the group policy under consideration, relying on R.S. 22:215 C which states in part as follows:
"Insurers issuing policies under this Section shall be subject to all the other applicable provisions of this Part ..." (emphasis supplied)
Evidently no consideration was given to R.S. 22:221 quoted above.
We further distinguish Cabibi for the reason that the policy here involved explicitly terminates the pregnancy benefits except under the circumstances set forth in the policy, none of which were shown to have existed. It is, arguably, further distinguishable in that the insurer there cancelled the policy; here it terminated under the terms of the policy when plaintiff ceased to be an employee.
Insurers may limit their liability and impose conditions upon their obligations, provided that the terms are not in derogation of existing statutes or public policy. If a conflict exists between the policy provisions and statutory requirements, the latter will prevail. Casey v. *1182 Prudential Insurance Company of America 360 So.2d 1386 (La.App. 3rd Cir.1978).
Harrington v. Prudential Insurance Company, 477 So.2d 1272 (La.App. 3rd Cir.1985) involved strikingly similar facts. At the time of discharge of plaintiff therein, his wife was three months pregnant. The policy provisions were similar, if not identical, to those herein. In reversing an award for pregnancy benefits the Court held that the pertinent provisions of the insurance policy were not in contravention of the insurance code. We reach the same conclusion here.
AFFIRMED AT THE COST OF THE APPELLANTS.
DOMENGEAUX, J., dissents and assigns reasons.
DOMENGEAUX, Judge, dissenting.
My reasons for dissenting herein parallel those given in my partial dissent in Harrington v. Prudential Ins. Co., 477 So.2d 1272, at pps. 1275 and 1276 (La.App. 3rd Cir.1985).
This case is similar to the Harrington case, and in order to eliminate redundancy I refer the reader to my remarks therein. I adhere to the proposition which I advanced in Harrington and accordingly conclude that the case sub judice should be decided on contract and statutory law, and that the plaintiffs herein should recover appropriate pregnancy and delivery expenses.
Assuming arguendo that the contract here and statutory law (principally La.R.S. 22:213(B)(7) give no succor to plaintiffs, then in that event the "abuse of rights doctrine" may be applicable. The Louisiana Supreme Court in Cataldie, 456 So.2d 1373 (La.1984), found no need to decide that case on the "abuse of rights doctrine", because it concluded that its decision therein was governed by the contract and statutory law. However, the high court, through the majority opinion, seemed anxious to consider that doctrine when presented with the proper case. This case, I suggest, may offer an avenue for such consideration.
I respectfully dissent.
NOTES
[*] Judge Ted R. Broyles of the Thirtieth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.