524 So.2d 101 (1988)
Pacita Viada, Wife of/and Edward VIADA, Sr.
v.
BLUE CROSS OF LOUISIANA.
No. CA-8871.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
Robert W. Drouant, Heisler & Wysocki, New Orleans, for appellants.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Michael A. Chernekoff, Pierre V. Miller, II, New Orleans, for appellee.
Before GULOTTA, C.J., and LOBRANO and WARD, JJ.
GULOTTA, Chief Judge.
In this suit involving two health insurance policies, plaintiff-insureds appeal from a judgment dismissing their claims for damages, penalties, and attorney's fees after the defendant-insurer cancelled the policies and denied claims in excess of $25,000.00. The trial judge found that the cancellations were justified because plaintiffs had failed to pay the premiums timely on the first policy and had made false and material misrepresentations in applying for the second. We find no error.

*102 BACKGROUND
On November 1, 1975, Edward and Pacita Viada obtained a major medical health insurance policy from Blue Cross of Louisiana. During the next five years, Blue Cross honored various claims, but cancelled the insurance as of May 1, 1981, after the Viadas' premium payment for April, 1981 was returned for insufficient funds and they later failed to bring their account current.
After receiving an August 25, 1981 letter of cancellation, Viada met with a Blue Cross agent to apply for new coverage. In answer to questions in the application form about his wife's prior medical history, Viada disclosed her previous nervous condition and stomach operation, but did not advise the agent of her numerous other past medical problems, and hospitalizations. On the basis of the signed application, Blue Cross issued a new contract of insurance effective October 15, 1981.
During the first half of 1982, Mrs. Viada was hospitalized, and the Viadas submitted a number of claims under the new policy. Upon investigating the claims, however, Blue Cross discovered that Mrs. Viada's medical history was much more extensive than represented in the policy application. Consequently, the insurer cancelled the policy retroactively to its effective date because of material misrepresentations. The Viadas received a refund of all premiums paid, however, less the amount of benefits that had been paid on their behalf. Most of the claims denied by Blue Cross were ultimately paid by the Viadas' group insurance carrier under a separate policy of insurance.
This suit followed, alleging that Blue Cross had unreasonably and unjustifiably denied the claims under the 1981 (second) policy. In opposition to Blue Cross's motion for summary judgment, plaintiffs contended that Blue Cross had improperly cancelled the 1975 policy of insurance. Over Blue Cross's objection, the trial court heard evidence concerning both policies.
After a trial on the merits before a commissioner, plaintiffs' suit was dismissed. In extensive written reasons, which were adopted by the trial judge, the commissioner concluded that Blue Cross had satisfied its burden of showing that it was justified in cancelling both policies. He found that the Viadas had neglected to make timely payments of the premiums on the 1975 policy, and had made material misrepresentations in applying for insurance in 1981.
Appealing, plaintiffs contend that the trial judge and the commissioner erred in the following four respects: 1) in finding that Blue Cross properly cancelled the 1975 policy; 2) in failing to continue the policies "without prejudice to any claim originating prior thereto" as required by LSA-R.S. 22:213(B)(7); 3) in failing to find that Blue Cross had induced plaintiffs to allow their 1975 policy to be cancelled by misleading them to believe that they could apply for and obtain the 1981 policy; and 4) in finding that plaintiffs had misrepresented Mrs. Viada's medical history in applying for the new policy. We find no merit to these contentions.

CANCELLATION OF THE 1975 POLICY
Plaintiffs argue that Blue Cross had a history of accepting late payments on the 1975 contract, yet changed its established practice without advising them. We disagree.
The 1975 policy provides that the insurance contract is automatically terminated if the fees are not paid within ten days after they become due. Blue Cross's underwriting manager testified that the premiums were due on the first of each month and, if they were not paid by the time of the next billing, Blue Cross would issue a "reinstatement" notice. This notice informed the policyholder that the insurance was cancelled but could automatically be reinstated if the unpaid premium from the previous month, plus the premium due for the current month, were paid within ten days of the notice. If the insured failed to make this double payment timely, the policy remained cancelled. If the insured later tendered a payment to bring the account current, Blue Cross's underwriting department exercised its discretion in deciding *103 whether to reinstate the cancelled policy. According to the underwriter, the company's procedure for reinstatement allowed a policy holder approximately 45 days to pay an unpaid premium and maintain his coverage.
After the Viadas' check for the April, 1981 premium was returned for insufficient funds, their May payment was credited to the April period. When they failed to pay the premiums for the months of May and June within 10 days of a notice from Blue Cross, their policy became ineligible for automatic reinstatement. Although Viada made a payment in August, 1981, for four months' of past due premiums (May-August), Blue Cross's underwriting department in its discretion refused to reinstate the policy and notified Mr. Viada in a letter of cancellation dated August 25, 1981.
According to the underwriter, Blue Cross did everything it could to notify the Viadas concerning their non-payment of the premiums. He testified that one of the reasons the policy was not reinstated was because of the Viadas' payment history, which had included prior instances of late or NSF payments.
In light of this evidence, we cannot say the commissioner and the trial judge erred in concluding that Blue Cross "did not act arbitrarily in deciding not to reinstate the contract...."

PREJUDICE TO PRIOR CLAIMS
We further reject plaintiffs' argument that Blue Cross improperly denied coverage for expenses incurred for Mrs. Viada's preexisting medical problems. In this regard plaintiffs cite LSA-R.S. 22:213(B)(7), which requires health and accident insurance policies to provide that cancellation "... shall be without prejudice to any claim originating prior thereto."
In Cataldie v. Louisiana Health Service and Indemnity Co., 456 So.2d 1373 (La. 1984), the Louisiana Supreme Court applied LSA-R.S. 22:213(B)(7) in a case where Blue Cross had effectively forced an insured to cancel his policy by reducing coverage and increasing premiums after the insured's daughter was diagnosed as having brain cancer. Under these circumstances, the Supreme Court held that the cancellation was unconscionable and that the insurer was required by the statute to provide continuing coverage relating to the cancer. Similarly, in Cabibi v. Louisiana Health Service and Indemnity Co., 465 So.2d 56, 57 (La.App. 4th Cir.1985), we followed the Cataldie decision to hold that a group health insurer could not unilaterally, upon 30 days notice to the insured, cancel coverage to the prejudice of a beneficiary who had diabetes and was expected to incur lifetime expenses in connection with his chronic condition.
In the instant case, however, unlike the Cataldie and Cabibi decisions, Blue Cross has not cancelled the policy at its whim. Rather, the Viadas lost coverage under the 1975 policy because they failed to pay the premiums timely. LSA-R.S. 22:213(B)(7) and the cited decisions cannot be read so broadly as to compel an insurer to provide continuing coverage for preexisting medical conditions under a lapsed policy. As noted by the Supreme Court in the Cataldie opinion, the legislative purpose of LSA-R.S. 22:213(B)(7) is to prevent the unconscionable cancellation of health insurance policies by an insurer after an illness occurs but before the loss has fully accrued. The statute does not relieve the insured of his contractual obligation to pay his policy premiums timely in order to maintain coverage.
The facts of the instant case are more akin to Trevino v. Prudential Ins. Co., 504 So.2d 1179, (La.App. 3rd Cir.1987), writ denied 506 So.2d 1230 (La.1987), where our brothers on the Third Circuit distinguished Cataldie and Cabibi in a case involving group medical insurance for corporate employees. In Trevino, the policy provided that coverage would automatically cease when the insured employee terminated his job. In denying a claim for maternity benefits where a child was born seven months after the employee-father's employment had ended, the Trevino court noted that the policy had terminated by virtue of its *104 own terms when the insured had ceased working for the company. Likewise, in the instant case, Blue Cross did not unilaterally cancel the Viadas' 1975 coverage, but rather the policy automatically terminated by its own terms when the Viadas filed to pay their premiums timely. Under these circumstances, Blue Cross is not obligated to provide continuing coverage for Mrs. Viada's preexisting medical problems. 
IMPROPER INDUCEMENT
Plaintiffs further argue that they allowed their 1975 policy to be cancelled because Blue Cross induced them to believe that the insurance would be reinstated.
As noted by the commissioner, the August 25, 1981 form letter of cancellation did not induce or mislead the Viadas to their detriment. Before receiving the letter, the Viadas had already lost coverage by failing to pay the premiums timely. The letter simply informed Mrs. Viada that her request to reinstate the cancelled policy had been refused because of a lapse of time, and that she could contact Blue Cross's enrollment department if she wished to apply for new insurance coverage. No promises or guarantees were given that coverage would be provided. Furthermore, Mr. Viada acknowledged that he was signing an application for a new and different policy in 1981. Under these circumstances, we conclude that he was not misled into believing that the 1981 policy was a continuation of his earlier insurance.

MATERIAL MISREPRESENTATIONS
We further find no error in the commissioner and trial judge's conclusions that Blue Cross was justified in cancelling the 1981 policy because of the Viadas' material misrepresentations in their insurance application.
An insurer can rescind a contract of insurance if the policyholder, either fraudulently or with an intent to deceive the insurer, makes misrepresentations in his application that materially affect the insurer's risk. LSA-R.S. 22:619(B); Johnson v. Occidental Life Ins. Co. of Cal., 368 So.2d 1032 (La.1979); Jones v. United Sav. Life Ins. Co., 486 So.2d 1110 (La.App. 2nd Cir. 1986); Cabra v. Great American Reserve Ins. Co., 509 So.2d 633 (La.App. 3rd Cir. 1987), writ denied 512 So.2d 436 (La.1987). In order to show the applicant's intent to deceive, strict proof of fraud is not required; rather, the intent can be determined from the surrounding circumstances indicating that the applicant knew his representations were false and recognized that they were material. False statements concerning prior hospitalizations have been held to be material. Jones v. United Sav. Life Ins. Co., supra.
Upon applying for the 1981 policy, Viada did not answer the agent's questions accurately concerning Mrs. Viada's state of health. The evidence indicates that although the agent asked if Mrs. Viada had ever had any of a list of specific ailments or surgical treatments within the last ten years, Viada only advised him of her nervousness and stomach problems, without mentioning her numerous other preexisting medical problems which involved her appendix, bladder, pancreas, heart, and spine. Indeed, a hospitalization summary in evidence indicates that Mrs. Viada was hospitalized over twenty times with a variety of diagnoses prior to the time of the application. Significantly, after Blue Cross cancelled the 1981 policy, Mr. Viada applied for insurance with Mutual of Omaha and again withheld his wife's prior conditions. As noted by the commissioner, "... it appears obvious from the record that Viada was asked about the hospitalizations and medical history yet failed to disclose all of the medical history and repeated hospitalizations of his wife." Under these circumstances, his misrepresentations were material and constituted grounds for cancelling the policy.
In so holding, we reject plaintiffs' argument that Blue Cross knew or should have known of Mrs. Viada's prior medical history from her previous claims under the 1975 policy or should have independently examined her. Blue Cross relied on the the application by Mr. Viada and a questionnaire completed by Mrs. Viada's physician that failed to disclose her full medical history. *105 Viada's only explanation for his oversight was that he had "faith" in the insurer and assumed that Blue Cross would check its records under the previous policy.
Absent an indication of error, an insurer need not be suspicious of an application for insurance nor investigate its own files. Bamburg v. Reserve Life Insurance Co., 259 So.2d 408 (La.App. 2nd Cir.1972). Indeed, Blue Cross's underwriter testified that the company relies on the health information given in the application as being most current, and cannot realistically search its own records because of the large number of applicants and the possibility of name changes and variations. As pointed out by the commissioner, Blue Cross did all that was legally required in reviewing plaintiffs' signed application and physician's statement, and properly cancelled the policy upon determining that the information supplied by the Viadas and their physician was "inaccurate and incomplete".
Accordingly, the judgment is affirmed.
AFFIRMED.