538 So.2d 210 (1989)
Steven J. SONIAT and Debra Landry Soniat
v.
TRAVELERS INSURANCE COMPANY and Iberville Fabricators, Inc.
No. 87-C-2705.
Supreme Court of Louisiana.
January 30, 1989.
*211 Dana Larpenteur, Wilbert & Larpenteur, Plaquemine, for applicant.
Alton Pierce, Jr., Durant, Pierce & Malone, Baton Rouge, for respondent.
LEMMON, Justice.
The principal issue in this case is whether the medical expenses for the delivery of plaintiffs' child were covered under an employees group health insurance policy when the pregnancy occurred while the policy was in effect, but the child was not born until after the policy had been cancelled for non-payment of premiums by the employer and the employee's employment had been terminated by the employer's business failure. Under La.R.S. 22:213 B(7), as that statute read at the time of the events at issue here, cancellation of a policy by an insurer could not "prejudice any claim arising prior thereto".[1] For the reasons hereafter discussed we hold that the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., does not pre-empt La.R.S. 22:213 B(7); that Section 213 B(7) applied to group health and accident insurance policies in 1984; and that the insurer's cancellation of the policy did not affect plaintiff's claim for expenses arising from the pregnancy which originated prior to the cancellation.
Facts
When his wife became pregnant in 1983, Steven Soniat had been employed by Iberville Fabricators for nine years. Soniat had medical and hospitalization insurance coverage for himself and his wife under a group health insurance policy which covered Iberville's employees through Iberville's membership in the Louisiana Association of Business and Industry (LABI). The group insurance plan was administered by LABI and underwritten by Travelers Insurance Company.[2]
Iberville deducted a portion of the premiums for the insurance from Soniat's wages and paid the balance as a fringe benefit. Deductions of premiums from Soniat's wages continued until April 18, 1984, but Iberville failed to remit the premiums to LABI for February and March.
On March 19, 1984, LABI notified Iberville that premiums had not been paid for the months of February and March and that the policy would be cancelled if payment was not received by March 31. On April 4, 1984, LABI notified Iberville by letter that "your group coverage has been cancelled for non-payment of premiums effective February 1, 1984". Thereafter LABI wrote Travelers requesting that payment of claims be made through the date for which Iberville had remitted premium payments. One of the pending claims was *212 that of Soniat for expenses of his wife's prenatal care, some of which had already been paid by Travelers.
Although the Soniats never received written notice of cancellation of the policy, Mrs. Soniat contacted Travelers directly in April, 1984 to inquire about her coverage. Travelers informed her that there would be coverage only until the end of April and then only if Iberville remitted the collected premiums. As to her paying the premiums individually, she was informed that the policy could be converted from a group policy to an individual policy, but the individual policy would not cover the expenses connected with her pregnancy which had originated before the effective date of the individual policy.
Iberville went out of business in early May of 1984, and Soniat's employment was terminated at that time.
On June 22, 1984, Mrs. Soniat gave birth to a son. When the Soniats filed a claim for expenses of the delivery and subsequent care of the baby in the amount of $7,703.39, Travelers declined payment on the basis that the expenses were incurred after termination of Soniat's coverage under the policy. The Soniats then filed the instant action.
After trial on the merits the district court rendered judgment in favor of the Soniats for double the medical expenses, plus interest, attorney's fees and costs. The court of appeal reversed, holding that May 31, 1984, the last day of the month in which Soniat's employment terminated, was the last possible date that Soniat could have had coverage under the policy.[3] 517 So.2d 325. Since the expenses were not incurred until the child's birth in June, the court reasoned that the policy did not provide coverage.[4]
We granted certiorari to consider the correctness of that holding. 518 So.2d 511.
Pre-emption of State Law by ERISA
Travelers filed exceptions of no cause of action and lack of subject matter jurisdiction in the court of appeal and in this court, contending that the relief sought by the Soniats under Louisiana law was pre-empted by ERISA. Citing Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), Travelers argues that the remedies specified in ERISA are exclusive and that all state common law and statutory remedies for benefits under an ERISA plan are pre-empted.
Through ERISA Congress established comprehensive regulation of, among other things, employee welfare benefit plans that "through the purchase of insurance or otherwise" provide medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability or death. 29 U.S.C. § 1002(1). The group medical insurance purchased by Iberville for its employees through LABI was clearly an employee benefit plan subject to regulation by ERISA.
The petition in this case, which set forth a claim for benefits allegedly due under the insurance policy written by Travelers, clearly stated a cause of action for recovery of benefits under both ERISA and Louisiana law.[5] Furthermore, ERISA specifically *213 provides that state courts have concurrent jurisdiction with federal district courts over actions brought by an employee to recover benefits due him under an ERISA-regulated plan.[6] Thus, the district court properly overruled Travelers' exceptions. The crucial ERISA issue on the merits is whether the pre-emption provision of 29 U.S.C. § 1144 precludes application of La.R.S. 22:213 B(7), the state law upon which the Soniats rely for relief in this case.
The provisions of ERISA relating to pre-emption include the pre-emption clause in § 1144(a), the saving clause in § 1144(b)(2)(A), and the deemer clause in § 1144(b)(2)(B), as follows:
"Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). (emphasis added)
"Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).
"Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies. 29 U.S.C. § 1144(b)(2)(B)."
Thus, state laws which relate to employee benefit plans are pre-empted by ERISA except for those state laws that regulate insurance. Moreover, a state law that purports to regulate insurance cannot deem an employee benefit plan to be an insurance company.
The welfare benefit plans which purchase insurance necessarily are affected directly by state laws that regulate the insurance industry. Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). While the purpose of the ERISA pre-emption is to provide uniform application to benefit claims under ERISA-regulated plans, Congress apparently intended by enacting the saving clause to leave regulation of the insurance industry to the states. The key inquiry in the present case is the applicability of the saving clause.
In the Pilot Life case the claimant was injured on the job with a company that provided long term disability benefits to its employees who became permanently disabled. After the claimant received disability benefits for two years, payments were discontinued, but were reinstated and discontinued by Pilot Life several times over the next three years. The claimant filed suit against Pilot Life in federal court, pleading state common law causes of action of tortious breach of contract, breach of fiduciary duty, and fraud in the inducement. He sought damages for failure to provide benefits, general damages for mental distress, and punitive damages.
The Court held that state common law tort and contract actions asserting improper processing of a claim for benefits under an insured employee benefit plan are pre-empted under ERISA. Congress' use of the term "relate to any employee benefit plan" in 29 U.S.C. § 1144(a) evidenced an intent for ERISA to have a broad pre-emptive stroke. Inasmuch as the claimant's *214 common law cause of action was a state law that related to an employee benefit plan, the Mississippi "law of bad faith" (upon which the claimant relied) fell under ERISA's express pre-emption clause, unless the law was one which regulated insurance. The Court, applying a common sense view of the saving clause, noted that a law which regulates insurance must not just have an impact on the insurance industry, but must be specifically directed toward that industry, and concluded that the Mississippi "law of bad faith" was rooted in the general principles of tort and contract law rather than being specifically directed toward the insurance industry.
The Court further discussed that the three criteria used in Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), to identify the "business of insurance" and determined that the "common law of bad faith" did not have the effect of spreading a policyholder risk; the law was not an integral part of the insurer-insured relationship and was attenuated at best; and the law was not limited to entities within the insurance industry.
Finally, the Court averted to the remedies provided by ERISA. Civil actions may be brought under ERISA to recover benefits due under the plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits.[7] 29 U.S.C. § 1132(a). A court in its discretion may also award attorney's fees. 29 U.S.C. § 1132(g)(1). The Court then emphasized that Congress intended not to authorize other remedies, stating:
"The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."
Id. at 54.
The Court distinguished the Metropolitan Life case as one which did not involve a state law that conflicted with a substantive provision of ERISA.[8] The Court stated that Congress had clearly expressed an intent for ERISA's civil enforcement scheme to be exclusive and for the federal remedy to displace conflicting state causes of action. Accordingly, the Court rejected the state common law cause of action asserting improper processing of an insurance contract claim as pre-empted by ERISA.
In the present case, the Soniats sought to apply a provision of the Louisiana Insurance Code in order to recover benefits allegedly due under the group plan. La.R.S. 22:213 B(7) is part of a body of statutory law which does not just have an impact on the insurance industry, but is specifically directed to that industry. It therefore is clearly a state law which regulates insurance. Moreover, the remedies sought in this case, unlike the common law causes of action asserted in Pilot Life, are not available in every other Louisiana contract case.
The stated legislative purpose of the Insurance Code was to "regulate insurers and the insurance business". See Acts 1958, No. 125, which reenacted and amended the Insurance Code, La.R.S. 22:1 et seq. The statute at issue thus regulates the business of insurance.[9] This is precisely the type of state law which ERISA's saving *215 clause intended to save from pre-emption.[10] Of further significance are the facts that the state law at issue does not conflict with the substantive provisions of ERISA and that the application of La.R.S. 22:213 B(7) does not create a conflict with ERISA's civil enforcement scheme.
We therefore conclude that the Soniats' cause of action is not pre-empted by ERISA.
Cancellation of the Policy
Relying on La.R.S. 22:213 B(7), the Soniats contend that the cancellation of the policy in March, 1984 did not affect their claim for benefits relating to the pregnancy which "originated prior thereto".[11] The court of appeal rejected this contention, noting that Section 213 B(7) specifically pertains only to cancellation of the policy and that termination of a beneficiary's coverage was involved in this case. Distinguishing between cancellation of the policy and termination of coverage of a beneficiary, the court held that, regardless of the validity of the cancellation, Soniat's coverage terminated under the terms of the policy on the last day of the month in which Soniat's employment was terminated.[12]
The record clearly established that the policy was cancelled for non-payment of premiums prior to Soniat's termination of employment. Because of the cancellation, the policy was no longer in effect at the time of Soniat's termination of employment.[13] If cancellation of the policy accorded Soniat the right under Section 213 B(7) to benefits arising from the pregnancy that originated prior to the cancellation, the subsequent termination of Soniat's employment (especially since the termination was for reasons beyond Soniat's control) had no effect on Soniat's rights under the already cancelled policy.
The "without prejudice" provision of Section 213 B(7) does not apply only to expenses for medical services rendered before the date of cancellation, but applies also to services related to the condition of which the insurer was aware before it cancelled the policy. See Cataldie v. Louisiana Health Service & Indemnity Co., 456 So.2d 1373 (La.1984). Here, as in Cataldie, the risk for which the insured bargained to receive coverage and for which the insurer bargained to be exposed was realized before the policy was cancelled. Therefore, under Section 213 B(7) the cancellation was without prejudice to the Soniat's claim for medical expenses of the pregnancy, a risk which was realized prior to the cancellation of the policy.
Travelers argues, however, that Section 213 B(7) is inapplicable to group policies, pointing out La.R.S. 22:221 provides that "[t]he provisions of R.S. 22:212 through 22:214 shall not apply to group or *216 blanket health and accident insurance policies...."
At the time the Legislature enacted La. R.S. 22:221 and at the time this controversy arose, La.R.S. 22:215 C provided that "[i]nsurers issuing policies under this Section shall be subject to all the other applicable provisions of this Part".[14] Notwithstanding Section 221, Travelers' policy was issued under Section 215 and was therefore subject to Section 213 B(7), which was in the same Part as Section 215. In effect, Section 215 C required by reference that group health policies be subject to the provisions of Section 213 B(7)'s cancellation clause.[15] W. McKenzie & H. Johnson, 15 Louisiana Civil Law TreatiseInsurance Law and Practice § 286 (1986), footnote 73.
Penalty
Travelers contends that double damages as a penalty under La.R.S. 22:657 A are not warranted in this case. We agree. The statutory penalty may be imposed only if the insurer failed to pay the claim timely without just and reasonable grounds for denying the claim.[16]
Here, the insurer reasonably asserted the defenses that the coverage terminated upon Soniat's termination before incurrence of the expenses (a contention that the intermediate court accepted) and that Section 213 B(7) does not apply to group policies. Although we have ultimately rejected these contentions, the defenses formed a reasonable basis upon which the insurer could require a court decision without being exposed to a penalty for arbitrariness.
As to attorney's fees, however, ERISA provides for such an award as a matter of discretion. 29 U.S.C. § 1132(g)(1). Although the trial court in this case awarded attorney's fees under an inapplicable state law, the award was authorized under controlling federal law and is thereby affirmed.
Decree
Accordingly, the judgment of the court of appeal is reversed, and the judgment of the trial court is reinstated, except for the penalty of double damages. All costs are assessed against defendant.
COLE, J., concurs.
NOTES
[1] At the time of the events in this case La.R.S. 22:213 B(7) provided:

"Cancellation: The insurer may cancel this policy at any time by written notice delivered to the insured, or mailed to his last address as shown by the records of the insurer, and shall refund the pro rata unearned portion of any premium paid. Such cancellation shall be without prejudice to any claim originating prior thereto. The insured may likewise cancel this policy on the above terms." (emphasis added)
[2] LABI was charged with collecting the premiums from the various companies insured under the plan, furnishing Travelers with information as to which companies were insured under the plan and which employees participated in the LABI Group Insurance Trust.
[3] The policy provisions pertinent to termination of coverage were as follows:

"Your insurance under this plan will terminate at the earliest time stated below:
"When or on the last day of the month during which your employment terminates. For insurance purposes, your employment is deemed terminated when you cease active work, but your employer may continue your insurance
(a) if you are absent from work because of injury or sickness, or
(b) if you are absent from work because of leave of absence or temporary layoff, but only for a limited period as determined by your employer.
"2. When you cease your contributions, if any are required, toward the Plan.
"3. When this Plan is discontinued."
[4] Because of its decision that coverage terminated under the terms of the policy before the child's birth, the intermediate court specifically pretermitted consideration of the issue whether the Soniats were entitled to receive written notice of the cancellation of the group policy.
[5] 29 U.S.C. § 1132(a)(1)(B) provides:

"A civil action may be brought
"(1) by a participant or beneficiary
"(A) for relief provided for in subsection (c) of this section, or
"(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." (emphasis added)
[6] 29 U.S.C. § 1132(e)(1) provides as follows:

"Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exlusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section." (emphasis added)
[7] Actions may also be brought to remove a fiduciary for breach of his fiduciary duty.
[8] In Metropolitan Life the Court held that an action under a Massachusetts statute, requiring minimum health care benefits to be provided to Massachusetts residents covered by general health insurance policies, related to employee benefit plans and fell under the pre-emption clause. However, because the statute was one that regulated insurance, the saving clause prevented the state law from being pre-empted by ERISA.
[9] As to the criteria used in Union Labor Life Insurance Co. v. Pireno, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982), to determine whether a practice falls under the "business of insurance" and applied in Pilot Life to interpret ERISA's saving clause, La.R.S. 22:213 B(7) is an integral part of the relationship between the insurer and the insured, and is limited to entities within the insurance industry. The statute also effects a spreading of the policyholder risk.
[10] A statute requiring that cancellation of an insurance policy does not prejudice claims originating prior to cancellation by the insurer is more similar to the mandated-benefit statute at issue in Metropolitan Life than to the common law contract remedy at issue in Pilot Life.
[11] La.R.S. 22:213 B(7) was amended in 1985 to add:

"Upon such cancellation, however, the insurer shall not be liable for any claim for benefits accrued, or for expenses incurred for services rendered, subsequent to the cancellation date unless otherwise provided in the policy."
Because the present cause of action arose prior to the amendment, the new statute need not be considered in this case.
[12] In W. McKenzie & H. Johnson, 15 Louisiana Civil Law TreatiseInsurance Law and Practice § 286 (1986), the authors note that cancellation and termination are two distinct acts which involve significantly different requirements and consequences. Cancellation of a policy differs from termination of coverage based on such reasons as termination of employment under a group policy. The authors further state that "the entire area of cancellation is not one in which the ordinary principles of contract law hold complete sway, but rather one like so many other areas of insurance law in which the public interest in the contract is so great that the legislator in effect becomes a party to the contract as well." Id. at 534.
[13] In each of the cases relied on by the court of appeal, a valid group insurance policy was in effect at the time the particular employee's employment ended. See Trevino v. Prudential Insurance Co., 504 So.2d 1179 (La.App. 3rd Cir. 1987), cert. denied, 506 So.2d 1230 (La.1987); LeBlanc v. Travelers Insurance Co., 486 So.2d 828 (La.App. 1st Cir.1986); Harrington v. Prudential Insurance Co., 477 So.2d 1272 (La.App. 3rd Cir.1985); Levine v. National Life and Acc. Ins. Co., 389 So.2d 864 (La.App. 4th Cir.1980).
[14] After the cause of action arose in this case, Section 215 was amended in 1985 to add Subsection A(1)(e), which provides:

"Except as may otherwise be provided in the policy or contract of group health and accident insurance, the insurer shall not be liable for benefits accrued, or for expenses incurred for services rendered, subsequent to the termination date where the policy of insurance terminates for failure of the group policyholder to pay premiums or where the employee's or member's coverage terminated for failure of the employee or member to maintain eligibility as provided in the policy or contract of group health and accident insurance."
[15] The court in Cabibi v. Louisiana Health Service & Indemnity Co., 465 So.2d 56 (La.App. 4th Cir.1985), followed Cataldie and applied the cancellation provision of Section 213 B(7) to a group health policy. See also DiPascal v. New York Life Insurance Co., 749 F.2d 255 (5th Cir. 1985), applying Louisiana law.
[16] Citing Blanchard v. Life Insurance Company of North America, No. 85-297-A (M.D.La.1987), Travelers also contends that La.R.S. 22:657 A is pre-empted by ERISA. Because we set aside the award of attorney's fees on other grounds, it is not necessary to reach this contention.